BENJAMIN B. WAGNER
United States Attorney
ANDRÉ M. ESPINOSA
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

FILED
FEB 11 2016
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>HELAMAN HANSEN,<br>Defendant. | CASE NO. 2:16-CR-0024 MCE<br><br>18 U.S.C. § 1349 – Conspiracy to Commit Mail Fraud and Wire Fraud; 18 U.S.C. § 1341 – Mail Fraud (Eleven Counts); 18 U.S.C. § 1343 – Wire Fraud; 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) - Criminal Forfeiture |

# INDICTMENT

COUNT ONE: [18 U.S.C. § 1349 – Conspiracy to Commit Mail Fraud and Wire Fraud]

The Grand Jury charges:

HELAMAN HANSEN

defendant herein, as follows:

## I. BACKGROUND

At all times relevant to this Indictment,

1. Americans Helping America Chamber of Commerce ("AHA") was a purported non-profit organization that operated out of offices in Sacramento, in the State and Eastern District of California. Among other things, AHA purported to provide advice and assistance to adult illegal aliens residing in California and elsewhere in navigating the United States immigration laws. AHA's business activities included the marketing, sale, and maintenance of "memberships" to victims of its fraudulent

"Migration Program," an elaborate adult-adoption program that was based on the false promise that adult illegal aliens residing in the United States could achieve United States citizenship after being legally adopted by an American citizen and completing a list of additional tasks.

2. Native Hawaiians and Pacific Islanders ("NHPI") was a subsidiary of AHA and a purported nonprofit organization that operated out of offices in Sacramento, in the State and Eastern District of California. NHPI was involved in the marketing, sale, and maintenance of memberships to victims of AHA's fraudulent Migration Program. NHPI primarily targeted the foreign Pacific Islander immigrant community.

3. Community Independent Business Owners ("CIBO") was a subsidiary of AHA and purported to be an import/export company focused on trade between the United States and the South Pacific. However, CIBO's former CEO and other of its agents were involved in the marketing, sale, and maintenance of memberships to victims of AHA's fraudulent Migration Program.

4. Fijians Helping Fiji ("FHF") was a subsidiary of AHA. Agents and employees of FHF were involved in the marketing, sale, and maintenance of memberships to victims of AHA's fraudulent Migration Program. FHF purported to maintain offices in Fiji.

5. Defendant HELAMAN HANSEN was an individual residing in Elk Grove, in Sacramento County, in the State and Eastern District of California. Defendant HELAMAN HANSEN claimed to hold a doctorate degree in Marketing and Business and referred to himself as "Dr. Hansen." Defendant HELAMAN HANSEN was also the founder of AHA and, at various times, held various positions at AHA, including Chief Executive Officer ("CEO"), and most recently, Chairman of the Board of Directors of AHA, NHPI, and CIBO.

6. The United States Citizenship and Immigration Services ("USCIS") was a government agency within the United States Department of Homeland Security that oversees lawful immigration to the United States.

7. An "alien" was any person who was not a citizen or a national of the United States.

8. United States immigration law imposed a numerical quota on the number of immigrant visas that could be issued and/or the number of aliens who could otherwise be admitted into the United States for permanent residence status. However, aliens who were "immediate relative[s]" of United

States citizens were exempt from these numerical limitations and could obtain immigrant visas by petitioning for immediate relative status. "Immediate relatives" included "children." The statutory definition of "child," for purposes of the relevant immigration law, included "a child adopted while under the age of sixteen years if the child has been in the legal custody of, and has resided with, the adopting parent or parents for at least two years."

9. The process of adjusting the immigration status of an adopted child by a family member included the completion and filing with USCIS of a Form I-130, Petition for Alien Relative ("Form I-130"). A Form I-130 established the family relationship between a child and relative. Filing a Form I-130 did not allow an alien relative to live or work in the United States. While a Form I-130 petition was pending, the alien relative was required to wait outside the United States to immigrate legally. In general, a Form I-130 could only be filed on behalf of an adopted alien child when all of the following conditions were met: (i) the adoption was finalized before the child's sixteenth birthday; (ii) the child had lived with the adoptive parents for at least two years, either before or after adoption; and (iii) the child had been in the adoptive parent's legal custody for at least two years, either before or after adoption. The written instructions on the face of the Form I-130 stated that it was intended to be used only in connection with adoptions of persons under the age of sixteen, and not those who had been adopted as adults.

10. Two additional paths existed under United States law to adjust the immigration status of an adopted alien child by a family member. The first additional path related to the adoption of an orphaned foreign national living overseas, which required the filing with USCIS of a Form I-600 or Form I-600A. Generally, a Form I-600 was required to have been properly filed before the orphan's sixteenth birthday. The adoption could have occurred after the orphan's sixteenth birthday, but only if the Form I-600 was filed before that day. A Form I-600 could also have been filed after the orphan's sixteenth birthday, but before the orphan's eighteenth birthday, but only if the orphan was the birth sibling of another foreign national child who had immigrated or would immigrate based on adoption by the same adoptive parents.

11. The second additional path under United States law to adjust the immigration status of an adopted child by a family member involved an adoption under the Hague Convention, which required

the filing with USCIS of a Form I-800 or Form I-800A. If a child was adopted through the Hague Adoption Convention adoption program, a Form I-800 was required to have been properly filed before the child's sixteenth birthday. Unlike the orphan program, there was no sibling exception in adoptions under the Hague Convention.

## II. THE CONSPIRACY

12. Beginning in or about October 2012, and continuing through the present, in the State and Eastern District of California and elsewhere, defendant HELAMAN HANSEN, and others known and unknown to the Grand Jury, did knowingly and intentionally agree, combine, and conspire with each other and others known and unknown to execute, through the use of the United States mails or private or commercial interstate carriers or through the use of wire communications in interstate commerce, a material scheme and artifice to defraud, and to obtain money by means of material false and fraudulent pretenses, representations, promises, and the concealment of material facts, in violation of Title 18, United States Code, Sections 1341 and 1343.

## III. MANNER AND MEANS

The defendant HELAMAN HANSEN and his co-conspirators used the following manner and means, among others, to accomplish the objects of the conspiracy.

13. To obtain money from victims in the form of membership fees and investments, defendant HELAMAN HANSEN, his co-conspirators, and others acting at their direction made false representations to victims and others that AHA's Migration Program could lead to United States citizenship; that adult adoption was a path to United States citizenship; that the Migration Program was lawful; that the Migration Program had the support or authorization of the United States government or various legal experts and authorities; that similar services were offered by licensed attorneys but at greater cost; and that AHA and its affiliates had successfully used the Migration Program to obtain citizenship for other illegal aliens. The defendant, his co-conspirators, and others acting at their direction also offered false justifications and explanations regarding immigration law and AHA's Migration Program to recruit victims and to keep victims enrolled in the Migration Program.

14. Beginning in or about October 2012, and continuing through the present, defendant HELAMAN HANSEN and others known and unknown to the Grand Jury marketed, sold, and

maintained memberships to victims of AHA's fraudulent Migration Program, an elaborate adult-adoption program that was based on the false promise that adult illegal aliens living in the United States could achieve United States citizenship after being legally adopted by an American citizen and completing a list of additional tasks.

15. Defendant HELAMAN HANSEN and his co-conspirators falsely represented to victims that membership in AHA's fraudulent Migration Program and completion of its various requirements would result in legal United States citizenship for adult illegal aliens living in the United States. Early in the scheme, the defendant, his co-conspirators, and others acting at their direction sold memberships to victims for fees of approximately $150. Over time, as defendant HELAMAN HANSEN and his co-conspirators lured an increasing number of victims to the scheme, that fee grew to $450, then $600, then $5,000, then $7,500, and eventually as high as $10,000.

16. To induce victims to purchase memberships in AHA's fraudulent Migration Program, defendant HELAMAN HANSEN and his co-conspirators falsely promised victims that they would achieve United States citizenship within one year after being legally adopted by an American citizen. As the scheme progressed, the defendant and his co-conspirators revised their false promises to victims and assured them that they would achieve United States citizenship within two years after being legally adopted by an American citizen.

17. Defendant HELAMAN HANSEN, his co-conspirators, and others acting at their direction marketed AHA's fraudulent Migration Program to victims through AHA and its subsidiaries - NHPI, CIBO, and FHF - all of which were engaged in substantially the same activity. Defendant HELAMAN HANSEN and his co-conspirators operated their scheme from shared office spaces in Sacramento, which housed AHA, NHPI, and CIBO. The defendant and his co-conspirators maintained and controlled bank accounts associated with AHA and its subsidiaries and deposited proceeds of their fraud scheme into those accounts and elsewhere.

18. Defendant HELAMAN HANSEN and his co-conspirators hired recruiting agents to work for AHA and its subsidiaries. The duty of those recruiting agents was to find illegal aliens living in California and elsewhere to solicit to join AHA's fraudulent Migration Program. Those recruiting agents received a commission of approximately $1,500 for each victim they persuaded to purchase a

membership in AHA's fraudulent Migration Program. Defendant HELAMAN HANSEN and his co-conspirators also offered those recruiting agents the opportunity to adopt victims of the scheme.

19. Victims of AHA's fraudulent Migration Program paid their membership fees in a variety of ways. Some victims delivered cash or checks to defendant HELAMAN HANSEN, his co-conspirators, and others acting at their direction. Other victims mailed checks to AHA or caused cash or checks to be deposited into accounts controlled by the defendant or his co-conspirators. Other victims completed wire transfers of funds from their accounts to accounts controlled by the defendant and his co-conspirators.

20. After a victim of AHA's fraudulent Migration Program paid the membership fee, defendant HELAMAN HANSEN, his co-conspirators, and others acting at their direction worked with the victim to complete an AHA membership application. In some instances, victims would mail their completed membership applications to AHA. Once a victim's membership application was processed, the defendant, his co-conspirators, and others acting at their direction worked with the victim to complete an adoption petition seeking a court order resulting in legal adoption of the victim by an American citizen.

21. The defendant, his co-conspirators, and others acting at their direction instructed victims to identify and recruit individuals to adopt the victims. However, if a victim was unable to find an individual willing to legally adopt the victim, the defendant, his co-conspirators, and others acting at their direction would locate an individual willing to adopt the victim. In some instances, the defendant, a co-conspirator, or another acting at their direction adopted the victim.

22. Defendant HELAMAN HANSEN, his co-conspirators, and others acting at their direction would include false information in victim adoption petitions. For example, if a victim of AHA's fraudulent Migration Program was not a resident of California or the county in which an adoption petition was to be filed, the defendant, his co-conspirators, and others acting at their direction would include a false address in that victim's adoption petition so that the petition could be considered by the court in which it was filed. On at least one occasion, defendant HELAMAN HANSEN fired an AHA employee who refused his instruction to include false information in victim adoption petitions.

23. Defendant HELAMAN HANSEN, his co-conspirators, and others acting at their direction

caused AHA-facilitated adoption petitions to be filed in courts in Sacramento County, Alameda County, Marin County, and Los Angeles County, among others. The defendant, his co-conspirators, and others acting at their direction also attended court proceedings for AHA-facilitated adult adoption proceedings and instructed victims how to respond to potential questions from the judge or others about the purpose of the adoption or other matters. After judicial proceedings in an AHA-facilitated adult adoption were completed, the court delivered by mail a copy of a final adoption order to the adoptive parent named in the petition. Thereafter, the adoptive parent usually mailed a copy of the final adoption order to the victim, who provided a copy to AHA as instructed.

24. After a victim successfully completed the adult-adoption stage of AHA's fraudulent Migration Program, defendant HELAMAN HANSEN and his co-conspirators required the victim to complete a list of additional tasks, including obtaining several official and unofficial documents supporting the victim's "new identity profile." Those documents included, among others, an adoption order, a delayed registration of birth certificate, an individual tax identification number ("I-TIN"), a driver's license, a vehicle registration, a library card, a bank account number, proof of health and life insurance, identification cards from employers or educational institutions, and membership cards to civic organizations, big-box retail stores, and other clubs.

25. Among the key documents required to advance through AHA's fraudulent Migration Program were a delayed registration of birth certificate and an I-TIN, which the rules of AHA's fraudulent Migration Program required victims to request and which were delivered to victims by mail from the California Department of Public Health and the Internal Revenue Service ("IRS"), respectively. In some instances, the IRS rejected a victim's application for an I-TIN and, instead, delivered by mail to that victim a temporary I-TIN.

26. Defendant HELAMAN HANSEN and his co-conspirators relied on the appearance of legitimacy to successfully operate their fraud scheme and lull their victims into suppressing doubts about AHA's fraudulent Migration Program and rejecting advice from skeptical friends or family. Defendant HELAMAN HANSEN and his co-conspirators also relied on the requirements imposed on victims of AHA's fraudulent Migration Program to extend the period of time necessary for victims to complete AHA's fraudulent Migration Program, which resulted in payments of additional membership fees from

victims who could not complete the program within one year and assisted AHA in delaying detection of the fraudulent scheme.

27. Defendant HELAMAN HANSEN and his co-conspirators also urged victims of AHA's fraudulent Migration Program to "invest" in AHA, and offered victims the opportunity to purchase up to 10,000 "shares" of AHA "stock" for $1 per share. The defendant and his co-conspirators promised victims of AHA's fraudulent Migration Program, who became adoptees, that AHA would convert a portion of the victims' membership fees into AHA shares at a price of $.20 per share. The defendant and his co-conspirators promised victims who bought AHA stock that the purported investment would mature and yield dividends after three years of payments.

28. After a victim remitted payment to defendant HELAMAN HANSEN, completed the adult-adoption stage of AHA's fraudulent Migration Program, and obtained at least the key required official and unofficial documents, defendant HELAMAN HANSEN caused to be prepared and submitted to UCSIC a Form I-130 Petition for Alien Relative to adjust the victim's immigration status.

29. In or about June 2012, defendant HELAMAN HANSEN caused a Form I-130 petition to be submitted to USCIS for Victim 1. USCIS denied that Form I-130 petition in or about October 2012 for failure to comply with procedural requirements and because the proposed adoptive parent was deceased. In denying the Form I-130 petition filed on behalf of Victim 1, USCIS also attached a document that explained that an adult adoption could not result in citizenship because the Form I-130 Petition for Alien Relative process was limited to alien children adopted before their sixteenth birthdays.

30. Although defendant HELAMAN HANSEN had been informed by USCIS as early as October 2012, that alien children adopted after their sixteenth birthdays could not obtain citizenship through the Form I-130 Petition for Alien Relative process, defendant and his co-conspirators omitted that information from their communications with victims. Instead, they continued to advertise AHA's fraudulent Migration Program, solicited victims with false promises that the program would result in United States citizenship, and accepted payment from victims who relied on those false promises. Moreover, although defendant HELAMAN HANSEN knew that AHA's fraudulent Migration Program had never resulted in United States citizenship for any victim of his scheme, and could not result in United States citizenship for them, he falsely told victims the opposite to induce them to participate in

AHA's fraudulent Migration Program.

31. Defendant HELAMAN HANSEN and his co-conspirators falsely assured victims who were skeptical of the legitimacy of AHA's fraudulent Migration Program that many past members had become United States citizens as a result of participating in the program. However, when skeptical victims or others asked for proof, the defendant and his co-conspirators often told those skeptical victims that privacy laws prevented AHA from disclosing the identities of successful participants in the program. In truth and in fact, defendant HELAMAN HANSEN knew that no past member of AHA's fraudulent Migration Program had become a United States citizen through participation in the program.

32. During "training" sessions with recruiting agents hired by AHA and its subsidiaries, Defendant HELAMAN HANSEN and his co-conspirators instructed those recruiting agents to tell potential victims that others had become United States citizens by participating in AHA's fraudulent Migration Program, but that privacy laws prevented disclosure of their identities.

33. Defendant HELAMAN HANSEN and his co-conspirators advertised the AHA's fraudulent Migration Program widely. In addition to word-of-mouth and print advertisement, presentations to church congregations, and official websites for AHA and its subsidiaries, defendant HELAMAN HANSEN also caused to be uploaded to publicly accessible websites on the Internet, including YouTube, the video-upload website, dozens of videos of varying lengths marketing AHA's fraudulent Migration Program to potential victims. The defendant and his co-conspirators also advertised AHA's fraudulent Migration Program though social media websites like Facebook, on pages associated with AHA and the individual identities of the defendant and certain of his co-conspirators.

34. Videos uploaded to the several YouTube channels controlled by defendant HELAMAN HANSEN included a series uploaded in or about June 2015 and titled: "US Citizenship Through Adult Adoption [parts 1 through 4]." In those videos, the defendant discussed AHA's fraudulent Migration Program. In the fourth video in that series, the defendant falsely stated that the "law" permitting AHA's fraudulent Migration Program is not an American law. Rather, the defendant falsely stated that AHA's fraudulent Migration Program is permitted under a United Nations law that provides that a person adopted in a court of a particular country receives the same citizenship rights as if that person was born in that country. The defendant also falsely stated that through AHA's fraudulent Migration Program,

AHA customers "inherit the citizenship rights" of the adopting parents. The defendant stated that the program can take up to two years because of government delay, but that AHA works to accomplish its efforts within twelve months. The defendant also falsely stated that "the process of this whole thing, it's a legal process, it's step-by-step, all the way through and it's all done correctly according to the law."

35. In additional to serving as advertisement for AHA's fraudulent Migration Program, defendant HELAMAN HANSEN's false statements in videos advertising AHA's fraudulent Migration Program were intended to lull potential victims into suppressing their doubts about the legitimacy of AHA's fraudulent Migration Program and to lull them to reject the advice of skeptical friends or family. Those false statements were also intended to lull existing but skeptical or disappointed AHA customers into refraining from reporting their suspicions about AHA's fraudulent Migration Program to law enforcement authorities.

36. To conceal their scheme and avoid detection by their victims and others, Defendant HELAMAN HANSEN and his co-conspirators were evasive about the technical details and purported legal foundation of AHA's fraudulent Migration Program. Defendant HELAMAN HANSEN often told those skeptical of the legitimacy of AHA's fraudulent Migration Program that he had met with a retired United States Supreme Court Justice who had written a law permitting AHA's fraudulent Migration Program and who taught the defendant how to implement that law. In other instances, the defendant told skeptics that AHA's fraudulent Migration Program was authorized under a United Nations law that superseded United States law.

37. Between in or about October 2012 and the present, defendant HELAMAN HANSEN and his co-coconspirators induced approximately 500 victims to join AHA's fraudulent Migration Program. As a result of the conspiracy, victims of AHA's fraudulent Migration Program paid more than $500,000 to the defendant and his co-conspirators to obtain legal United States citizenship through a process that defendant HELAMAN HANSEN knew could not result in legal United States citizenship.

All in violation of Title 18, United States Code, Section 1349.

<u>COUNTS TWO THROUGH TWELVE</u>: [18 U.S.C. § 1341 – Mail Fraud]

The Grand Jury further charges:

HELAMAN HANSEN,

defendant herein, as follows:

## I. THE SCHEME TO DEFRAUD

1. Beginning on or about October 2012, through the present, in the State and Eastern District of California and elsewhere, defendant HELAMAN HANSEN, and others known and unknown to the Grand Jury, knowingly devised, intended to devise, and participated in a material scheme and artifice to defraud and to obtain money by means of material false and fraudulent pretenses, representations, promises, and the concealment of material facts.

2. The purpose of the scheme and artifice to defraud was to induce victims to give money to defendant HELAMAN HANSEN and others known and unknown to the Grand Jury based on false and fraudulent representations, that is, the victims were induced to purchase and maintain memberships in an adult-adoption program that was based on the false promise that adult illegal aliens living in the United States could achieve United States citizenship after being legally adopted by an American citizen and completing a list of additional tasks.

## II. MANNER AND MEANS

3. The allegations in Paragraphs 1 through 11 and Paragraphs 13 through 37 of Count One are re-alleged and incorporated herein by reference as if set forth in their entirety.

## III. USE OF THE MAILS

4. On or about the dates set forth below, in the Eastern District of California, for the purpose of executing the aforementioned scheme and artifice to defraud, and attempting to do so, defendant HELAMAN HANSEN and others did knowingly cause to be placed in a post office or authorized depository for mail matter to be delivered by the Postal Service, did knowingly cause to be deposited for sending or delivery by a private and commercial interstate carrier, and did knowingly cause to be delivered by the United States mail or such commercial interstate carrier, according to the directions thereon, the items more specifically set forth below:

| Count | Approximate Date | From | To | Mail Item |
|---|---|---|---|---|
| 2 | August 27, 2013 | IRS | Victim 2 | I-TIN |

| | | | | |
|---|---|---|---|---|
| 3 | July 7, 2014 | California Department of Public Health | Victim 3 (Adoptive Parent of Victim 7) | Delayed Registration of Birth Certificate |
| 4 | September 3, 2014 | Victim 4 in Northwest Bremerton, Washington | Native Hawaiians Pacific Islanders, in Sacramento, California | Migration Program Membership Application |
| 5 | May 11, 2015 | IRS | Victim 5 | Temporary I-TIN |
| 6 | May 19, 2015 | IRS | Victim 6 | I-TIN |
| 7 | June 22, 2015 | IRS | Victim 7 | I-TIN |
| 8 | July 10, 2015 | IRS | Victim 8 | I-TIN |
| 9 | July 21, 2015 | IRS | Victim 9 | I-TIN |
| 10 | October 9, 2015 | IRS | Victim 10 | Temporary I-TIN |
| 11 | November 17, 2015 | IRS | Victim 11 | Temporary I-TIN |
| 12 | December 3, 2015 | IRS | Victim 12 | I-TIN |

In violation of Title 18, United States Code, Sections 2 and 1341.

COUNT THIRTEEN: [18 U.S.C. § 1343 – Wire Fraud]

The Grand Jury further charges:

HELAMAN HANSEN,

defendant herein, as follows:

## I. THE SCHEME TO DEFRAUD

1. Beginning on or about October 2012, through the present, in the State and Eastern District of California and elsewhere, defendant HELAMAN HANSEN, and others known and unknown to the Grand Jury, knowingly devised, intended to devise, and participated in a material scheme and artifice to defraud and to obtain money by means of material false and fraudulent pretenses,

representations, promises, and the concealment of material facts.

2. The purpose of the scheme and artifice to defraud was to induce victims to give money to defendant HELAMAN HANSEN and others known and unknown to the Grand Jury based on false and fraudulent representations, that is, the victims were induced to purchase and maintain memberships in an adult-adoption program that was based on the false promise that adult illegal aliens living in the United States could achieve United States citizenship after being legally adopted by an American citizen and completing a list of additional tasks.

## II. MANNER AND MEANS

3. The allegations in Paragraphs 1 through 11 and Paragraphs 13 through 37 of Count One are re-alleged and incorporated herein by reference as if set forth in their entirety.

## III. USE OF INTERSTATE WIRES

4. On or about the dates set forth below, in the State and Eastern District of California, for the purpose of executing the aforementioned scheme and artifice to defraud, and attempting to do so, defendant HELAMAN HANSEN and others did knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals and sounds, specifically:

| Count | Date | Description of Wire |
|---|---|---|
| 13 | September 3, 2014 | Email from Victim 4 delivering proof of payment for participation in Migration Program, sent using Gmail from Bremerton, Washington, to representative of Native Hawaiians Pacific Islanders, in Sacramento, California, using email hosted by LiquidWeb, which hosts data centers outside of California |

In violation of Title 18, United States Code, Sections 2 and 1343.

FORFEITURE ALLEGATION: [18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Criminal Forfeiture]

1. Upon conviction of one or more of the offenses alleged in Counts One through Thirteen of this Indictment, defendant HELAMAN HANSEN shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real and personal, which constitutes or is derived from proceeds traceable to such violations, including but not limited to the following:

a. A sum of money equal to the amount of proceeds traceable to such offenses, for

which defendant is convicted.

2. If any property subject to forfeiture, as a result of the offenses alleged in Counts One through Fourteen of this Indictment, for which defendant is convicted:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 28 U.S.C. § 2461(c), incorporating 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendant, up to the value of the property subject to forfeiture.

A TRUE BILL

**/s/ Signature on file w/AUSA**

FOREPERSON

BENJAMIN B. WAGNER
United States Attorney

*No.* __________

**UNITED STATES DISTRICT COURT**

*Eastern District of California*

*Criminal Division*

THE UNITED STATES OF AMERICA

*vs.*

HELAMAN HANSEN

INDICTMENT

**VIOLATION(S):** 18 U.S.C. § 1349 – Conspiracy to Commit Mail Fraud and Wire Fraud;
18 U.S.C. § 1341 – Mail Fraud (Eleven Counts);
18 U.S.C. § 1343 – Wire Fraud;
18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Criminal Forfeiture

*A true bill,*

**/s/ Signature on file w/AUSA**

*Foreman.*

*Filed in open court this* ____11____ *day*

*of* ____February____, *A.D. 20* 16

*Clerk.*

*Bail, $* **NO BAIL WARRANT PENDING HEARING**

**Carolyn K. Delaney**
**U.S. Magistrate Judge**

GPO 863 525

2:16 - CR - 0024 MCE

**United States v. HELAMAN HANSEN**
**Penalties for Indictment**

**Defendants**
**HELAMAN HANSEN**

**COUNT 1:** **ALL DEFENDANTS**

VIOLATION: 18 U.S.C. § 1349 – CONSPIRACY TO COMMIT MAIL FRAUD AND WIRE FRAUD

PENALTIES: Maximum of 20 years in prison; or
Fine of up to $250,000; or both fine and imprisonment
Supervised release of not more than 3

SPECIAL ASSESSMENT: $100 (mandatory on each count)

**COUNTS 2 – 12:** **ALL DEFENDANTS**

VIOLATION: 18 U.S.C. § 1341 – Mail Fraud

PENALTIES: Maximum of 20 years in prison; or
Fine of up to $250,000; or both fine and imprisonment
Supervised release of not more than 3

SPECIAL ASSESSMENT: $100 (mandatory on each count)

**COUNT 13:** **ALL DEFENDANTS**

VIOLATION: 18 U.S.C. § 1343 – Wire Fraud

PENALTIES: Maximum of 20 years in prison; or
Fine of up to $250,000; or both fine and imprisonment
Supervised release of not more than 3

SPECIAL ASSESSMENT: $100 (mandatory on each count)

**FORFEITURE ALLEGATION:** **ALL DEFENDANTS**

VIOLATION: 981(a)(1)(C) and 28 U.S.C. § 2461 – Criminal Forfeiture

PENALTIES: As stated in the charging document

2:16 - CR - 0024 MCE