PHILLIP A. TALBERT
Acting United States Attorney
ANDRÉ M. ESPINOSA
KATHERINE T. LYDON
Assistant U. S. Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:16-CR-0024 MCE |
| Plaintiff, | GOVERNMENT'S MOTION FOR ARREST WARRANT AND REVOCATION OF RELEASE PURSUANT TO 18 U.S.C. § 3148 |
| v. | |
| HELAMAN HANSEN, | |
| Defendant. | |

The government moves pursuant to 18 U.S.C. § 3148 for the issuance of a warrant for the arrest of defendant Helaman Hansen, to be brought before the Court for a hearing to determine whether he violated the conditions of pre-trial release ordered by this Court. *See* ECF Nos 14, 15. At the hearing, the government will move pursuant to 18 U.S.C. § 3148 based on the facts set forth below that this Court revoke Hansen's release and order him detained pre-trial. There is clear and convincing evidence that Hansen, while on pre-trial release, violated the terms of his release by recording and posting YouTube videos directed at and sending emails to victims of his adult adoption fraud scheme, in violation of a special condition of his supervised release that he have no contact whatsoever with victims. *See* ECF No. 14. There is likewise clear and convincing evidence that Hansen encouraged victims to continue to participate in his adult adoption fraud scheme, in violation of a special condition of his supervised release that he not encourage or have any involvement in the acceptance of money in

exchange of immigration advice of any kind. *Id.* There is also probable cause to believe that, by sending emails and posting internet videos encouraging victims to stay involved in his fraudulent organization and threatening witnesses, he committed wire fraud and witness tampering in violation of the standard condition of supervised release that he not commit another federal, state, or local crime.

## I. FACTS AND PROCEDURAL BACKGROUND

### A. Hansen was indicted for perpetrating an adult adoption fraud scheme

Hansen founded and ran Americans Helping America Chamber of Commerce ("AHA"), a purported nonprofit that claimed to provide advice and assistance to adult illegal aliens residing in California and elsewhere in navigating the United States immigration laws. AHA's business activities included the marketing, sale, and maintenance of "memberships" to victims of its fraudulent "Migration Program," an elaborate adult-adoption program that was based on the false promise that adult illegal aliens residing in the United States could achieve United States citizenships after being legally adopted by an American citizen and completing a list of additional tasks. In reality, "adult adoptions" are not paths to citizenship. To conceal their scheme and avoid detection by their victims and others Hansen and his co-conspirators were evasive about the technical details and purported legal foundation of AHA's fraudulent Migration Program. ECF No. 1, ¶ 36. In some instances, the defendant told skeptics that AHA's fraudulent Migration Program was authorized under a United Nations law that superseded United States law. *Id.*

Among the methods the defendant used to advertise AHAs fraudulent Migration Program to potential victims were dozens of YouTube Videos. *See* ECF No. 1, ¶¶ 33-35. For example, in or about June 2015, a series of videos entitled "US Citizenship Through Adult Adoption [parts 1 through 4]" were uploaded to YouTube channels controlled by the defendant. In the fourth video in that series, the defendant stated that the "law" permitting AHA's fraudulent Migration Program is not an American law, but rather a United Nations law that provides that a person adopted in a court of a particular country receives the same citizenship rights as if that person was born in that country. ECF No. 1, ¶ 34. The defendant also stated that through AHA's fraudulent Migration Program AHA customers "inherit the citizenship rights" of the adopting parents. *Id.* The defendant stated that the process can take up to two years because of government delays, but that AHA works to accomplish its efforts

within twelve months.  The defendant also falsely stated that "the process of this whole thing is a legal process, it's step-by-step, all the way through and it's all done correctly according to the law." *Id*.  In addition to serving as advertisements for AHA's fraudulent Migration Program, Hansen's false statements on these videos were intended to lull current and potential victims of AHA's fraudulent migration program into suppressing their doubts about its legitimacy or reporting suspicions about its legitimacy to law enforcement authorities.

When challenged about the legitimacy of his program, Hansen reacted by doubling down and threatening victims.  He planned a series of meetings for victims once he learned he was under investigation, which he advertised via flyers threatening that any victim who did not attend would be reported to immigration authorities as undocumented:

> IF YOU DO NOT COME TO THIS MEETING, THEN THIS AGENCY WILL HAVE NO CHOICE, BUT TO EXERCISE THE FEDERAL LAW THAT HAS BEEN PASSED/ AUTHORISED TO US BY THE HOMELAND SECURITY TO HAND IN ALL THE LIST OF THE ABOVE PEOPLE'S STATUS TO THE HOMELAND SECURITY AND THAT'S BY THE LAW, HAS BEEN PASSED.

Ex. 1.

On February 11, 2016, a federal grand jury in the Eastern District of California returned an indictment charging Hansen with one count of Conspiracy to Commit Mail Fraud and Wire Fraud in violation of 18 U.S.C. § 1349, eleven counts of mail fraud in violation of 18 U.S.C. § 1341, one count of wire fraud in violation of 18 U.S.C. § 1343, and a criminal forfeiture allegation pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

**B.     Hansen was released pre-trial on conditions prohibiting him from contacting victims and a $200,000 secured bond**

Hansen's detention hearing was continued twice, from the initial February 12, 2016 hearing where he was detained as a risk of nonappearance by Judge Delaney, to February 17 and February 26 hearings before Judge Claire.  On February 17, his counsel sought his release on an unsecured bond signed by the defendant and his sister, and represented that a bond and conditions could be fashioned to assure the Court and the government that "any concerns financially about his business is going to have a close eye on him and those businesses to make sure that if indeed there has been fraud there will not continue to be fraud."  Ex. 2 at 8.  The government raised among its concerns that particularly in light

of Hansen's misrepresentations (claiming he held a Ph.D. when he did not, consistently misleading his victims and his family, etc.) that he would mislead any potential sureties such that an unsecured bond would not assure his appearance. *Id*. at 9-10. The government noted that it was unclear whether Hansen's brother in law might have a residence with equity and it was unclear whether the brother in law was willing to offer it up as security, commenting that it spoke volumes that, after doing business in the community for over ten years, Hansen had not offered a single person willing to offer security. *Id*. at 10. The Court replied: "Yeah. It concerns me quite a bit." *Id*. The Court ordered him detained as a flight risk without prejudice. *Id*. at 12-13.

On February 26, the Court ordered the defendant released on conditions and a $250,000 bail package, comprised of $200,000 secured by equity in a Utah property owned by the defendant's sister and brother in law, Sunia A. Williams and Kalesita F. Williams, and the remaining portion unsecured and co-signed by Katherine and John Mann. *See* Ex. 3. The parties agreed and the Court ordered that Hansen's release would be delayed until completion of securing the property. *Id*. at 3-4, 6. The Williams and the defendant signed the $200,000 appearance bond under penalty of perjuring pledging that the property was not subject to claims except those stated on the bond, and that they would "not sell the property, allow further claims to be made against it, or do anything to reduce its value while this appearance bond is in effect." ECF No. 18.

The release order included standard and special conditions. A standard condition of release was that Hansen "not commit any offense in violation of federal, state or local law while on release in this case." ECF No. 17 at 1. He was advised that "[v]iolation of any condition of your release may also result in arrest by a law enforcement officer, the immediate issuance of a warrant for your arrest, revocation of release, and order of detention, and a prosecution for contempt which could result in a possible term of imprisonment and/or a fine." ECF No. 17 at 2. He was further specifically advised of and affirmed he understood the additional criminal penalties for obstruction of justice, including tampering with or harassing a victim, witness or informant in violation of 18 U.S.C. § 1512. *Id*. The Court ordered the following special conditions:

    10.    You shall not facilitate, encourage, participate in or otherwise have any involvement in the acceptance of money or other things of value in exchange for immigration advice or any kind, including but not limited to adult adoptions in pursuit of citizenship, obtaining U visas, or obtaining other types of visas; and

    11.    You shall have no direct or indirect contact whatsoever with victims of AHA's Migration Program, including any adoptive parents of those victims or others involved in the facts that form the basis of the charges against you.

ECF No. 14; Ex. 3 at 5-6.

### C.    Hansen repeatedly harassed victims and continued to perpetrate the fraud for which he was indicted, in violation of his conditions of release

    1. After he was released, Hansen posted videos to a YouTube channel directed at victims asserting that the charges against him are unfounded and AHA's fraudulent migration program is legitimate

On or about June 3, 2016, a video which has been lodged with the Court Clerk's office as Exhibit 4 to this motion was uploaded to a YouTube account controlled by Hansen. *See* ECF No. 36, *available at* https://www.youtube.com/watch?v=PCAUZ2qouQA&feature=youtu.be. Within the first 30 seconds of the video "Dr." Hansen claims the charges against him are simply a "misunderstanding." Hansen seems to claim, beginning at approximately the 4-minute mark, that a state law or UN law permits his adult-adoption-to-citizenship scheme. At the to the 6-minute mark to 10:30, Hansen specifically invites former customers (and implicitly new customers) who have a "clear understanding" that AHA is relying only on state and UN law, to come back to and email AHA for immigration assistance. As of the filing of this motion, the video has been viewed 217 views.

On or about June 17, 2016, a video which has been lodged with the Court Clerk's office as Exhibit 5 to this motion was uploaded to a YouTube account controlled by Hansen. *See* ECF No. 36, *available at* https://www.youtube.com/watch?v=0KwGsu-XZNA. In that video, Hansen claims the charges against him are unsupported by evidence, and purports to be responding to publicly reported information about the case. *See, e.g.*, Ex. 5 at 11:47-13:30. He insinuates that a state law or UN law permits his adult-adoption-to-citizenship scheme. *See* Ex. 5 at 6:08-8:17. Hansen falsely claims that state law adoptions result in citizenship, stating that: "The federal [law] is only for [the] Hague law for the minor adoptions and that's it. Full stop. The adults have got nothing to do with that. It stays in the state processing because it's a piece of state law. Adult adoption law comes from the state." *Id.* at 15:15-16:00. Hansen goes on to state: "It's in 'United Nations law' when a person is adopted to any

country by a court of that country, by a judge of that country, it's the same thing as a sibling of a citizen of that country." *Id*. at 16:35-49.  At the 19:45 mark, Hansen claims the customers he scammed are liars who were never promised anything.  Approximately 20 minutes into the video, he claims, regarding those of Mexican descent who have accused him of scamming them, that he has "never seen one of them."  Hansen claims that AHA was conducting business totally "above board" and "the best." *Id*. at 20:30-21:20.  Approximately 46 minutes in, Hansen claims that out of the 500 people he allegedly scammed, most got discounts, and only 13 people paid him $10,000.  Overall, his long speech attempts to lure customers back to his scheme by convincing them AHA is not an illegal scam, in violation of Conditions 10 and 11 of his pre-trial release.

> 2. Hansen's Pre-Trial Services Officer learned of the videos and reminded Hansen of Conditions 10 and 11

On June 30, 2016, Hansen mentioned in a conversation with his Pre-Trial Services Officer that he had been posting online videos pertaining to AHA.  She specifically asked him if he was in compliance with Conditions 10 and 11 and he responded that he was.

> 3. Hansen again violated his conditions of release through videos directed at and emails to victims, potential victims, and cooperators

On or about August 16, 2016, a video which has been lodged with the Court Clerk as Exhibit 6 to this motion was uploaded to a YouTube account controlled by Hansen.  *See* ECF No. 36, *available at* https://www.youtube.com/watch?v=yrKGWBhGbLw.  In that video, Hansen claims that AHA runs on state law and "we are going to continue.  We are going to press on that."  At 12:58, Hansen tells his audience: "don't be deterred by what the government is trying to do."  Beginning at approximately 14:15 he claims the prosecution is based on lies and falsehoods.  From approximately 17:30 to 18:34, Hansen directly threatens cooperators with lawsuits and jail:

> So if any of you coming in the last bit and declare your little allegiance to whatever you believe, whatever the FBI is doing, good luck to you.  But don't interfere, with the matter of the people, by the people for the people of the United States, which is the member of the American's Helping Americans, the citizens of the United States. So leave them alone, don't interfere, don't pull your weight around and make you opinions known, we are gonna sue you and take you as far as we can go to jail, for affecting the lives of the poor people.

On August 16, 2016, an email account controlled by Hansen sent an email and several attachments to potential and confirmed victims of the AHA Migration Fraud scheme, discussing the criminal charges and included representations such as the following, claiming that AHA could continue operating notwithstanding the federal charges:

> The segregation of the court trial from the Federal Government charges has been clearly defined that the rest of the AHA-Chamber of Commerce business activities can start organizing again due to associated members worldwide has been obstructed by this unconstitutional and wild behavior of the Federal Government to cause harm to the Disadvantage minority poor community worldwide.

Ex. 7. Another attachment, directed "[t]o all members of the above corporations that are under the umbrella of the AHA-Americans Helping America whether active or inactive," similarly sought to lull AHA victims that four of the organizations five programs were "clear . . . to go ahead." *Id*.

On August 22, 2016, at least five videos depicting Hansen discussing "processing" in the AHA programs were uploaded to a YouTube channel controlled by Hansen. One of the videos, which has been lodged with the Court Clerk as Exhibit 8 to this motion, begins with Hansen describing the video's purpose as "to continue our training program" and describes, again, the charges against him as a "misunderstanding." *See* Ex. 8, *available at*: https://www.youtube.com/watch?v=WgJ1jneeQZk. Overall, the video seeks to lure and lull victims into continuing to participate in AHA's fraudulent migration program. From approximately 16:04 – 16:30, Hansen falsely promises his program will result in citizenship in two years maximum. He falsely claims his program will convert undocumented people to legal citizens. *Id*. at approximately 22:57 ("Number one: you come in as undocumented illegal persons, whatever, we change you to become a documented person and also a legal processed person, living in the city and become a citizen of the state, and you're recognized.") He indicates beginning at approximately minute 51 that he plans to perpetuate AHA's fraudulent Migration Program despite the criminal charges against him, stating: "it's going to be done. We going to do it from here, going to do it from jail, it doesn't matter to me."

On September 2, 2016, Hansen sent another email (*see* Ex. 10) and published another YouTube video to victims, perhaps the most overtly threatening communication yet. The email includes a 4-person "List of trouble maker" (sic) including an individual referenced in the Indictment. Ex. 10 at 4.

7

The email includes a link to an approximately 44 minute YouTube video of the defendant, a copy of which has been lodged with the Court Clerk as Exhibit 9. *See* ECF No. 36, *available at* https://www.youtube.com/watch?v=0ciZwk5CuiE&feature=youtu.be.  From approximately 2:40 through 5:50, the defendant warns Fijians not to give information to the FBI and threatens to sue people who do.  For example,

> [T]he government has took the ball and run with it because of some stupid people from Fiji and some other people, have created this information and evidence for the FBI.  I don't want to talk about this case, but there are some people who are still doing that, and I can warn, if I catch you with these people who are going around in the community the members of AHA, FHA, there will be a lawsuit against those people.  And I want to pinpoint those people to stay away, to steer clear, of Americans Helping Americans.

Hansen claims he knows a Fijian who "has been wired by the FBI to come in, even questions in our office" and he intends to disclose the purported cooperator's name and cause "an embarrassing situation."  A few minutes later, he names a person who he believes to be cooperating with the FBI and compares him at length to a monkey.  He then forecasts that the purported cooperator will be deported: "this is the person who has been sending information to the FBI. Guess what after he send the FBI, he is illegal here.  The ICE will grab him and send him back to Fiji.  Because those people think the FBI promise you citizenship here.  It's not going to happen."  Later in the video, he repeats the allegation that the purported cooperator is a monkey several times and predicts that he will be deported. *See, e.g.*, Ex. 9 at 22:00 – 25:00.

Beginning at approximately 21:30, Hansen claims that people who have been talking to the FBI have criminal history he knows about but the FBI currently doesn't, and it will all play out such that the cooperators will get sent to jail or deported.  Again, beginning at approximately 26:10, he threatens potential cooperators with lawsuits and jail:

> I may be able to figure out exactly how you interfere.  There going to be a lawsuit against you.  Can you afford a million dollars? They going to throw you in jail for 50 years. Because I can afford any losses, I can afford to fight in court.  But for you, as illegal aliens in this county, you are so smart to talk about these citizens, you don't even know.

Beginning at approximately 31:15, he seemingly claims he is working with the Donald Trump campaign and at 32:09 holds up a framed letter or certificate proclaiming "DR. HELAMAN HANSEN APPOINTED TO BUSINESS ADVISORY COUNCIL."  Hansen represents it is from the "Washington

DC Republican Congressional Committee" in recognition of his contributions to the Republican Party nationwide.  Accordingly, he claims, "this monkey doesn't know what he is talking about."

Beginning at approximately 35:24, he explicitly states: "somebody is going to get hurt."

Overall, the video consists mainly of Hansen disparaging and threatening cooperators and potential cooperators.

### D. The Utah property securing $200,000 of Hansen's appearance bond is subject to liquidation and foreclosure

Recently, the government received a Notice of Default from the Trustee of the mortgage on the Utah property posted by the Williams' to secure $200,000 of Hansen's appearance bond.  The Trustee communicated that the 2003 mortgage on the property was in default and the Trustee had received instructions to "cause the trust property to be sold to satisfy the obligations secured thereby."[1]  When the property was offered as security in this case, the defendant's counsel provided documentation that Salt Lake County Assessor valued the property at $420,100 and a Payoff Statement reflecting that as of March 10, 2016 the property remained subject to a mortgage, $248,484.98 of which remained unpaid. Assuming those numbers are current and the foreclosure sale is made at the property's full value, when the property is sold to satisfy the mortgage, only $171,615.02 will remain to secure the $200,000 bond.

## II. LEGAL STANDARDS

Pursuant to 18 U.S.C. § 3148, the government may initiate a proceeding for revocation of release by filing a motion.  A judicial officer may issue a warrant for the arrest of the person charged with violating a condition of release and that person shall be brought before a judicial officer.  The judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer –

(1) Finds that there is –
   (A) Probable cause to believe that the person has committed a Federal, State, or local crime while on release; or
   (B) Clear and convincing evidence that the person has violated any other conditions of release; and
(2) Finds that –

---

[1] The supporting documents concerning the impending foreclosure have been provided to the defense but not filed publicly because they are comprised mainly of the defendant's family members' personal information.

9

Government's Motion for Arrest Warrant and Revocation of
Release; U.S. v. Helaman Hansen, 2:16-cr-0024 MCE

(A) Based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or

(B) The person is unlikely to abide by any conditions or combinations of conditions of release.

18 U.S.C. § 3148.  If there is probable cause to believe that the person committed a Federal, State, or local felony while on release, a rebuttable assumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community.  *Id*.

### III. ANALYSIS

Revocation of Hansen's pre-trial release is appropriate under 18 U.S.C. § 3148.

**A.    There is probable cause to believe that Hansen has committed federal crimes while on pre-trial release**

Each of the four videos and emails constituted an interstate wire in furtherance of the scheme to defraud for which Hansen is under indictment, in violation of 18 U.S.C. §§ 3141.  Through these videos, the defendant sought to lull victims from disengaging with AHA and the Migration Program. He repeatedly characterized the charges as simply a "misunderstanding" and encouraged participants to continue to engage with AHA and its subsidiaries, which he claimed were continuing to operate.

In addition, by intimidating and threatening witnesses in an attempt to hinder, delay or prevent them from communicating information to law enforcement, Hansen has committed felony witness tampering in violation of Title 18, United States Code, Section 1512.  Hansen well knew witness tampering was a crime, having acknowledged in writing that he understood the penalties for all obstruction of justice crimes set forth in the notice he received upon release.  *See* ECF No. 17.

Pursuant to Section 3148, because there is probable cause to believe that while on supervised release Hansen committed felony wire fraud and felony witness tampering, a rebuttable presumption arises that no conditions or combinations of conditions can assure the safety of the community.

**B.    There is clear and convincing evidence that Hansen has violated a condition of pre-trial release**

Hansen sent emails and recorded videos appealing directly to victims of the AHA Migration Program scheme.  Thus, he is contacting victims and encouraging previous and new victims to engage

his bogus immigration assistance for pay—the precise conduct that forms the basis of the charges against him.  That conduct is in direct violation of Conditions 10 and 11 of his pretrial release.

### C. There are no conditions or combinations of conditions that will assure that Hansen will not flee or pose a danger to the community

The Court and the government had significant concerns at Hansen's initial detention hearings regarding flight.  The government noted at the detention hearing that it believed some conditions could be fashioned sufficient to assure Hansen's appearance, but only "by the slimmest of margins" as the government learned more about Hansen's economic situation and propensity towards candor.  *See* Ex. 2 at 2. The Court noted the lack of security "concerns me quite a bit" and also indicated the Court had concern about the "very substantial, fairly recent, cash withdrawals and where that money went." *Id*. at 10.  Now, the property which secured $200,000 of the bail package is being foreclosed and liquidated, leaving the government short approximately $30,000 in security.  Perhaps more importantly, the defendant's sister and brother in law are already losing their home, such that fleeing would no longer cost the defendant's family their primary residence.  Fleeing would only result in approximately $170,000 in economic loss and, given that the defendant's finances are murky at best and the location of the $1 million or more in likely proceeds of the fraud is unknown (*see* Ex. 2 at 3-4), the defendant may well be in a position to make his family whole should he flee.  The bond package is no longer sufficient to ensure the defendant's appearance.

Further, the defendant poses a danger to the community given that he has repeatedly engaged in witness tampering and overtly threatened cooperators and potential cooperators.  The government's witnesses are mainly undocumented individuals, many of whom have previously fallen victim to Hansen's lies and paid him to participate in AHA's fraudulent Migration Program.  In response to skepticism about the validity of the program, Hansen threatened he would report victims to immigration authorities if they reported him or cooperated.  Post-indictment, he is now making the same threats of deportation, lawsuits, and jail to his victims, a group particularly vulnerable to such threats.

### D. Hansen is unlikely to abide by any conditions or combination of conditions of release

The government had concerns that Hansen was unlikely to abide by the Court's order given that Hansen has been brazen in continuing his fraud, even after he learned of the investigation. Nonetheless, his defense counsel argued that conditions could be fashioned such that were would be "a close eye on him and those businesses to make sure that if indeed there has been fraud there will not continue to be fraud." Ex. 2 at 8. Ultimately, the parties fashioned and the Court ordered specific conditions of release prohibiting him from any contact with victims whatsoever and from offering any immigration services or advice. *See* ECF No. 14.

Hansen disregarded the Court's orders, and posted videos in July lulling victims to believe that his promises were legitimate and the charges against him were false. His Pre-Trial Services Officer learned of these videos and reminded him of special conditions 10 and 11 ordered by this Court. Rather than have his pre-trial release revoked at that point, he was given another chance to comply.

That warning did nothing to dissuade Hansen. He emailed victims and posted new videos on August 16, August 22 and September 2 which sought to continue the fraud and explicitly threatened cooperators and would be cooperators that they would "get hurt" if they cooperated with the FBI. He reiterated his false promises that state adoption would result in citizenship within two years. He included an individual referenced in the indictment on a "list of trouble maker[s]" sent in an email blast to AHA members. He threatened would-be cooperators with jail, lawsuits, and deportation. Based on statements made by recipients of Hansen's threatening communications to law enforcement agents, his efforts to scare witnesses have succeeded.

Hansen has shown himself entirely unwilling to cooperate with this Court's orders. He has received two chances and squandered them; indeed, his noncompliance and criminal witness tampering have escalated. His pretrial release should be revoked and he should be detained pending his December 5, 2016 trial.

### IV. <u>CONCLUSION</u>

On the basis of the foregoing, and in accordance with 18 U.S.C. § 3148(b), the United States requests that the Court issue a warrant for Helaman Hansen's arrest. As soon as practical, he should be brought before Judge Claire for a hearing at which the government will demonstrate probable cause

that he has committed a new crime while on release, that he has violated his conditions of release, that there are no conditions or combinations of conditions that can assure his appearance or protect the community, and that he is unlikely to abide by any condition or combination of conditions of release. 18 U.S.C. § 3148(b)(1) & (2).

Dated: September 26, 2016

PHILLIP A. TALBERT
Acting United States Attorney

*/s/ Katherine T. Lydon*
ANDRÉ M. ESPINOSA
KATHERINE T. LYDON
Assistant U.S. Attorneys