PHILLIP A. TALBERT
United States Attorney
ANDRÉ M. ESPINOSA
KATHERINE T. LYDON
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700

Attorneys for Plaintiff
United States of America

FILED
MAR 02 2017
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>HELAMAN HANSEN,<br>Defendant. | CASE NO. 2:16-CR-00024-MCE<br><br>18 U.S.C. § 1341 – Mail Fraud (13 Counts); 18 U.S.C. § 1343 – Wire Fraud (3 Counts); 8 U.S.C. § 1324(a)(1)(A)(iv) & (B)(i) – Encouraging and Inducing Illegal Immigration for Private Financial Gain (2 Counts); 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) - Criminal Forfeiture |

# SUPERSEDING INDICTMENT

COUNTS ONE THROUGH THIRTEEN: [18 U.S.C. § 1341 – Mail Fraud]

The Grand Jury charges:

HELAMAN HANSEN,

defendant herein, as follows:

## I. BACKGROUND

At all times relevant to this Indictment,

1. Americans Helping America Chamber of Commerce ("AHA") was a purported non-profit organization that operated out of offices in Sacramento, in the State and Eastern District of California. Among other things, AHA purported to provide advice and assistance to adult illegal aliens residing in California and elsewhere. AHA's business activities included the marketing, sale, and maintenance of "memberships" to victims of its fraudulent "Migration Program," an elaborate adult-adoption program that was based on the false promise that adult illegal aliens residing in the United

States could achieve United States citizenship after being legally adopted by an American citizen and completing a list of additional tasks.

2. Native Hawaiians and Pacific Islanders ("NHPI") was a subsidiary of AHA and a purported nonprofit organization that operated out of offices in Sacramento, in the State and Eastern District of California. NHPI was involved in the marketing, sale, and maintenance of memberships to victims of AHA's fraudulent Migration Program. NHPI primarily targeted the foreign Pacific Islander immigrant community.

3. Community Independent Business Owners ("CIBO") was a subsidiary of AHA and purported to be an import/export company focused on trade between the United States and the South Pacific. However, CIBO's former CEO and other of its agents were involved in the marketing, sale, and maintenance of memberships to victims of AHA's fraudulent Migration Program.

4. Fijians Helping Fiji ("FHF") was a subsidiary of AHA. Agents and employees of FHF were involved in the marketing, sale, and maintenance of memberships to victims of AHA's fraudulent Migration Program. FHF purported to maintain offices in Fiji.

5. Defendant HELAMAN HANSEN was an individual residing in Elk Grove, in Sacramento County, in the State and Eastern District of California. Defendant HELAMAN HANSEN claimed to hold a doctorate degree in Marketing and Business and referred to himself as "Dr. Hansen." Defendant HELAMAN HANSEN was also the founder of AHA and, at various times, held various positions at AHA, including Chief Executive Officer ("CEO"), and most recently, Chairman of the Board of Directors of AHA, NHPI, and CIBO.

6. The United States Citizenship and Immigration Services ("USCIS") was a government agency within the United States Department of Homeland Security that oversees lawful immigration to the United States.

7. An "alien" was any person who was not a citizen or a national of the United States.

8. United States immigration law imposed a numerical quota on the number of immigrant visas that could be issued and/or the number of aliens who could otherwise be admitted into the United States for permanent residence status. However, aliens who were "immediate relative[s]" of United States citizens were exempt from these numerical limitations and could obtain immigrant visas by

petitioning for immediate relative status. "Immediate relatives" included "children." The statutory definition of "child," for purposes of the relevant immigration law, included "a child adopted while under the age of sixteen years if the child has been in the legal custody of, and has resided with, the adopting parent or parents for at least two years."

9. The process of adjusting the immigration status of an adopted child by a family member included the completion and filing with USCIS of a Form I-130, Petition for Alien Relative ("Form I-130"). A Form I-130 established the family relationship between a child and relative. Filing a Form I-130 did not allow an alien relative to live or work in the United States. While a Form I-130 petition was pending, the alien relative was required to wait outside the United States to immigrate legally. In general, a Form I-130 could only be filed on behalf of an adopted alien child when all of the following conditions were met: (i) the adoption was finalized before the child's sixteenth birthday; (ii) the child had lived with the adoptive parents for at least two years, either before or after adoption; and (iii) the child had been in the adoptive parent's legal custody for at least two years, either before or after adoption. The written instructions on the face of the Form I-130 stated that it was intended to be used only in connection with adoptions of persons under the age of sixteen, and not those who had been adopted as adults.

10. Two additional paths existed under United States law to adjust the immigration status of an adopted alien child by a family member. The first additional path related to the adoption of an orphaned foreign national living overseas, which required the filing with USCIS of a Form I-600 or Form I-600A. Generally, a Form I-600 was required to have been properly filed before the orphan's sixteenth birthday. The adoption could have occurred after the orphan's sixteenth birthday, but only if the Form I-600 was filed before that day. A Form I-600 could also have been filed after the orphan's sixteenth birthday, but before the orphan's eighteenth birthday, but only if the orphan was the birth sibling of another foreign national child who had immigrated or would immigrate based on adoption by the same adoptive parents.

11. The second additional path under United States law to adjust the immigration status of an adopted child by a family member involved an adoption under the Hague Convention, which required the filing with USCIS of a Form I-800 or Form I-800A. If a child was adopted through the Hague

Convention adoption program, a Form I-800 was required to have been properly filed before the child's sixteenth birthday. Unlike the orphan program, there was no sibling exception in adoptions under the Hague Convention.

## II. SCHEME TO DEFRAUD

12. Beginning in or about October 2012, and continuing through September 2, 2016, in the State and Eastern District of California and elsewhere, defendant HELAMAN HANSEN knowingly devised, intended to devise, and participated in a material scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, promises, and the concealment of material facts.

13. The purpose of the scheme and artifice was to obtain payment from the marketing, sale, and maintenance of "memberships" to victims of his fraudulent "Migration Program," an elaborate adult-adoption program that was based on the false promise that adult illegal aliens residing in the United States could achieve United States citizenship after being legally adopted by an American citizen and completing a list of additional tasks.

## III. WAYS AND MEANS

In furtherance of the scheme and artifice to defraud, defendant HELAMAN HANSEN employed, among others, the ways and means described below.

14. To obtain money from victims in the form of membership fees and investments, defendant HELAMAN HANSEN and others acting at his direction made false representations to victims and others that AHA's Migration Program could lead to United States citizenship; that adult adoption was a path to United States citizenship; that the Migration Program was lawful; that the Migration Program had the support or authorization of the United States government or various legal experts and authorities; that similar services were offered by licensed attorneys but at greater cost; and that AHA and its affiliates had successfully used the Migration Program to obtain citizenship for other illegal aliens. The defendant and others acting at his direction also offered false justifications and explanations regarding immigration law and AHA's Migration Program to recruit victims and to keep victims enrolled in the Migration Program.

15. Beginning in or about October 2012, and continuing through September 2, 2016,

defendant HELAMAN HANSEN and others acting at his direction marketed, sold, and maintained memberships to victims of AHA's fraudulent Migration Program, an elaborate adult-adoption program that was based on the false promise that adult illegal aliens living in the United States could achieve United States citizenship after being legally adopted by an American citizen and completing a list of additional tasks.

16. Defendant HELAMAN HANSEN and others acting at his direction falsely represented to victims that membership in AHA's fraudulent Migration Program and completion of its various requirements would result in legal United States citizenship for adult illegal aliens living in the United States. Early in the scheme, the defendant and others acting at his direction sold memberships to victims for fees of approximately $150. Over time, as defendant HELAMAN HANSEN and others acting at his direction lured an increasing number of victims to the scheme, that fee grew to $450, then $600, then $5,000, then $7,500, and eventually as high as $10,000.

17. To induce victims to purchase memberships in AHA's fraudulent Migration Program, defendant HELAMAN HANSEN and others acting at his direction falsely promised victims that they would achieve United States citizenship within one year after being legally adopted by an American citizen. As the scheme progressed, the defendant and others acting at his direction revised their false promises to victims and assured them that they would achieve United States citizenship within two years after being legally adopted by an American citizen.

18. Defendant HELAMAN HANSEN and others acting at his direction marketed AHA's fraudulent Migration Program to victims through AHA and its subsidiaries - NHPI, CIBO, and FHF - all of which were engaged in substantially the same activity. Defendant HELAMAN HANSEN and others acting at his direction operated their scheme from shared office spaces in Sacramento, which housed AHA, NHPI, and CIBO. The defendant and others acting at his direction maintained and controlled bank accounts associated with AHA and its subsidiaries and deposited proceeds of their fraud scheme into those accounts and elsewhere.

19. Defendant HELAMAN HANSEN and others acting at his direction hired recruiting agents to work for AHA and its subsidiaries. The duty of those recruiting agents was to find illegal aliens living in California and elsewhere to solicit to join AHA's fraudulent Migration Program. Those

recruiting agents eventually received a commission of approximately $1,500 for each victim they persuaded to purchase a membership in AHA's fraudulent Migration Program. Defendant HELAMAN HANSEN and others acting at his direction also offered those recruiting agents the opportunity to adopt victims of the scheme.

20. Victims of AHA's fraudulent Migration Program paid their membership fees in a variety of ways. Some victims delivered cash or checks to defendant HELAMAN HANSEN or others acting at his direction. Other victims mailed checks to AHA or caused cash or checks to be deposited into accounts controlled by the defendant or others acting at his direction. Other victims completed wire transfers of funds from their accounts to accounts controlled by the defendant or others acting at his direction.

21. After a victim of AHA's fraudulent Migration Program paid the membership fee, defendant HELAMAN HANSEN and others acting at his direction worked with the victim to complete an AHA membership application. In some instances, victims would mail their completed membership applications to AHA. Once a victim's membership application was processed, the defendant or others acting at his direction worked with the victim to complete an adoption petition seeking a court order resulting in legal adoption of the victim by an American citizen.

22. The defendant and others acting at his direction instructed victims to identify and recruit individuals to adopt the victims. However, if a victim was unable to find an individual willing to legally adopt the victim, the defendant or others acting at his direction would locate an individual willing to adopt the victim. In some instances, the defendant or another acting at his direction adopted the victim.

23. Defendant HELAMAN HANSEN and others acting at his direction would include false information in victim adoption petitions. For example, if a victim of AHA's fraudulent Migration Program was not a resident of California or the county in which an adoption petition was to be filed, the defendant and others acting at his direction would include a false address in that victim's adoption petition so that the petition could be considered by the court in which it was filed. On at least one occasion, defendant HELAMAN HANSEN fired an AHA employee who refused his instruction to include false information in victim adoption petitions.

24. Defendant HELAMAN HANSEN and others acting at his direction caused AHA-

facilitated adoption petitions to be filed in courts in Sacramento County, Alameda County, Marin County, and Los Angeles County, among others. The defendant and others acting at his direction also attended court proceedings for AHA-facilitated adult adoption proceedings and instructed victims how to respond to potential questions from the judge or others about the purpose of the adoption or other matters. After judicial proceedings in an AHA-facilitated adult adoption were completed, the court delivered by mail a copy of a final adoption order to the adoptive parent named in the petition. Thereafter, the adoptive parent usually mailed a copy of the final adoption order to the victim, who provided a copy to AHA as instructed.

25. After a victim successfully completed the adult-adoption stage of AHA's fraudulent Migration Program, defendant HELAMAN HANSEN and others acting at his direction required the victim to complete a list of additional tasks, including obtaining several official and unofficial documents supporting the victim's "new identity profile." Those documents included, among others, an adoption order, a delayed registration of birth certificate, an individual tax identification number ("I-TIN"), a driver's license, a vehicle registration, a library card, a bank account number, proof of health and life insurance, identification cards from employers or educational institutions, and membership cards to civic organizations, big-box retail stores, and other clubs.

26. Among the key documents required to advance through AHA's fraudulent Migration Program were a delayed registration of birth certificate and an I-TIN, which the rules of AHA's fraudulent Migration Program required victims to request and which were delivered to victims by mail from the California Department of Public Health and the Internal Revenue Service ("IRS"), respectively. In some instances, the IRS rejected a victim's application for an I-TIN and, instead, delivered by mail to that victim a temporary I-TIN.

27. Defendant HELAMAN HANSEN and others acting at his direction relied on the appearance of legitimacy to successfully operate their fraud scheme and lull their victims into suppressing doubts about AHA's fraudulent Migration Program and rejecting advice from skeptical friends or family. Defendant HELAMAN HANSEN and others acting at his direction also relied on the requirements imposed on victims of AHA's fraudulent Migration Program to extend the period of time necessary for victims to complete AHA's fraudulent Migration Program, which resulted in payments of

additional membership fees from victims who could not complete the program within one year and assisted AHA in delaying detection of the fraudulent scheme.

28. Defendant HELAMAN HANSEN and others acting at his direction also urged victims of AHA's fraudulent Migration Program to "invest" in AHA, and offered victims the opportunity to purchase up to 10,000 "shares" of AHA "stock" for $1 per share. The defendant and others acting at his direction promised victims of AHA's fraudulent Migration Program, who became adoptees, that AHA would convert a portion of the victims' membership fees into AHA shares at a price of $.20 per share. The defendant and others acting at his direction promised victims who bought AHA stock that the purported investment would mature and yield dividends after three years of payments.

29. After a victim remitted payment to defendant HELAMAN HANSEN, completed the adult-adoption stage of AHA's fraudulent Migration Program, and obtained at least the key required official and unofficial documents, defendant HELAMAN HANSEN, in a small number of instances, caused to be prepared and submitted to USCIS a Form I-130 Petition for Alien Relative to adjust the victim's immigration status.

30. In or about June 2012, defendant HELAMAN HANSEN caused a Form I-130 petition to be submitted to USCIS for Victim 1. USCIS denied that Form I-130 petition in or about October 2012 for failure to comply with procedural requirements and because the proposed adoptive parent was deceased. In denying the Form I-130 petition filed on behalf of Victim 1, USCIS also attached a document that explained that an adult adoption could not result in citizenship because the Form I-130 Petition for Alien Relative process was limited to alien children adopted before their sixteenth birthdays.

31. Although defendant HELAMAN HANSEN had been informed by USCIS as early as October 2012 that alien children adopted after their sixteenth birthdays could not obtain citizenship through the Form I-130 Petition for Alien Relative process, defendant and others acting at his direction omitted that information from their communications with victims. Instead, they continued to advertise AHA's fraudulent Migration Program, solicited victims with false promises that the program would result in United States citizenship, and accepted payment from victims who relied on those false promises. Moreover, although defendant HELAMAN HANSEN knew that AHA's fraudulent Migration Program had never resulted in United States citizenship for any victim of his scheme, and could not

result in United States citizenship for them, he falsely told victims the opposite to induce them to participate in AHA's fraudulent Migration Program.

32. Defendant HELAMAN HANSEN and others acting at his direction falsely assured victims who were skeptical of the legitimacy of AHA's fraudulent Migration Program that many past members had become United States citizens as a result of participating in the program. However, when skeptical victims or others asked for proof, the defendant and others acting at his direction told those skeptical victims that privacy laws prevented AHA from disclosing the identities of successful participants in the program. In truth and in fact, defendant HELAMAN HANSEN knew that no past member of AHA's fraudulent Migration Program had become a United States citizen through participation in the program.

33. During "training" sessions with recruiting agents hired by AHA and its subsidiaries, defendant HELAMAN HANSEN and others acting at his direction instructed those recruiting agents to tell potential victims that others had become United States citizens by participating in AHA's fraudulent Migration Program, but that privacy laws prevented disclosure of their identities.

34. Defendant HELAMAN HANSEN and others acting at his direction advertised the AHA's fraudulent Migration Program widely. In addition to word-of-mouth and print advertisement, presentations to church congregations, and official websites for AHA and its subsidiaries, defendant HELAMAN HANSEN also caused to be uploaded to publicly accessible websites on the Internet, including YouTube, the video-upload website, dozens of videos of varying lengths marketing AHA's fraudulent Migration Program to potential victims. The defendant and others acting at his direction also advertised AHA's fraudulent Migration Program though social media websites like Facebook, on pages associated with AHA and the individual identities of the defendant and certain others acting at his direction.

35. Videos uploaded to the several YouTube channels controlled by defendant HELAMAN HANSEN included a series uploaded in or about June 2015 and titled: "US Citizenship Through Adult Adoption [parts 1 through 4]." In those videos, the defendant discussed AHA's fraudulent Migration Program. In the fourth video in that series, the defendant stated that the "law" permitting AHA's fraudulent Migration Program is not an American law. Rather, the defendant falsely stated that AHA's

fraudulent Migration Program is permitted under a United Nations law that provides that a person adopted in a court of a particular country receives the same citizenship rights as if that person was born in that country. The defendant also falsely stated that through AHA's fraudulent Migration Program, AHA customers "inherit the citizenship rights" of the adopting parents. The defendant stated that the program can take up to two years because of government delay, but that AHA works to accomplish its efforts within twelve months.

36. In additional to serving as advertisement for AHA's fraudulent Migration Program, defendant HELAMAN HANSEN's false statements in videos advertising AHA's fraudulent Migration Program were intended to lull potential victims into suppressing their doubts about the legitimacy of AHA's fraudulent Migration Program and to lull them to reject the advice of skeptical friends or family. Those false statements were also intended to lull existing but skeptical or disappointed AHA customers into refraining from reporting their suspicions about AHA's fraudulent Migration Program to law enforcement authorities.

37. To conceal their scheme and avoid detection by their victims and others, Defendant HELAMAN HANSEN and others acting at his direction were evasive about the technical details and purported legal foundation of AHA's fraudulent Migration Program. Defendant HELAMAN HANSEN often told those skeptical of the legitimacy of AHA's fraudulent Migration Program that he had met with a retired United States Supreme Court Justice who had written a law permitting AHA's fraudulent Migration Program and who taught the defendant how to implement that law. In other instances, the defendant told skeptics that AHA's fraudulent Migration Program was authorized under a United Nations law that superseded United States law.

38. It was further part of the scheme that defendant HELAMAN HANSEN made efforts to discourage victims and witnesses from assisting law enforcement agents in the investigation of AHA's fraudulent Migration Program.

39. Between in or about October 2012 and September 2016, defendant HELAMAN HANSEN and others acting at his direction induced approximately 500 victims to join AHA's fraudulent Migration Program. As a result, victims of AHA's fraudulent Migration Program paid approximately $1,000,000 to the defendant and others acting at his direction to obtain legal United

States citizenship through a process that defendant HELAMAN HANSEN knew could not result in legal United States citizenship.

## IV. MAILINGS

40. On or about the dates set forth below, in the Eastern District of California and elsewhere, for the purpose of executing the aforementioned scheme and artifice to defraud, and attempting to do so, defendant HELAMAN HANSEN knowingly caused to be delivered by the United States Postal Service and by any private or commercial interstate carrier, according to the direction thereon, the items more specifically set forth below:

| Count | Approximate Date | From | To | Mail Item |
|---|---|---|---|---|
| 1 | July 7, 2014 | CA Department of Public Health | Adoptive Parent of Victim 2 | Delayed Registration of Birth Certificate |
| 2 | July 10, 2014 | CA Department of Public Health | Adoptive Parent of Victim 3 | Delayed Registration of Birth Certificate |
| 3 | September 2, 2014 | CA Department of Public Health | Adoptive Parent of Victim 4 | Delayed Registration of Birth Certificate |
| 4 | September 3, 2014 | Victim 5 | Native Hawaiians Pacific Islanders | Migration Program Membership Application |
| 5 | December 19, 2014 | CA Department of Public Health | Adoptive Parent of Victim 6 | Delayed Registration of Birth Certificate |
| 6 | April 22, 2015 | AHA | Victim 7 | Delayed Registration of Birth Certificate |
| 7 | May 19, 2015 | IRS | Victim 8 | I-TIN |
| 8 | June 22, 2015 | IRS | Victim 2 | I-TIN |
| 9 | July 7, 2015 | CA Department of Public Health | Adoptive Parent of Victim 9 | Delayed Registration of Birth Certificate |
| 10 | July 10, 2015 | IRS | Victim 10 | I-TIN |
| 11 | July 21, 2015 | IRS | Victim 11 | I-TIN |
| 12 | December 3, 2015 | IRS | Victim 12 | I-TIN |
| 13 | August 4, 2016 | CA Department of Public Health | Victim 13 | Delayed Registration of Birth Certificate |

In violation of Title 18, United States Code, Sections 2 and 1341.

COUNTS FOURTEEN THROUGH SIXTEEN: [18 U.S.C. § 1343 – Wire Fraud]

The Grand Jury further charges:

HELAMAN HANSEN,

defendant herein, as follows:

## I. THE SCHEME TO DEFRAUD

1. Beginning in or about October 2012, and continuing through September 2, 2016, in the State and Eastern District of California and elsewhere, defendant HELAMAN HANSEN knowingly devised, intended to devise, and participated in a material scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, promises, and the concealment of material facts.

2. The purpose of the scheme and artifice was to obtain payment from the marketing, sale, and maintenance of "memberships" to victims of his fraudulent "Migration Program," an elaborate adult-adoption program that was based on the false promise that adult illegal aliens residing in the United States could achieve United States citizenship after being legally adopted by an American citizen and completing a list of additional tasks.

## II. MANNER AND MEANS

3. The allegations in Paragraphs 1 through 11 and Paragraphs 14 through 39 of Counts One through Thirteen are re-alleged and incorporated herein by reference as if set forth in their entirety.

## III. USE OF INTERSTATE WIRES

4. On or about the dates set forth below, in Eastern District of California and elsewhere, for the purpose of executing the aforementioned scheme and artifice to defraud, and attempting to do so, defendant HELAMAN HANSEN did knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals and sounds, specifically:

| Count | Date | Description of Wire |
|---|---|---|
| 14 | June 3, 2013 | Electronic transfer, via Fedwire, of approximately $1,100 from a Bank of America account, on behalf of Victim 14, to a Chase Bank account controlled by Americans Helping America. |
| 15 | September 3, 2014 | Email from Victim 5 delivering proof of payment for membership in Migration Program, sent from Bremerton, WA, to Native Hawaiians Pacific Islanders, in Sacramento, CA. |
| 16 | June 4, 2015 | Electronic transfer, via Fedwire, of approximately $3,500 from a Bank of America account, on behalf of Victim 15, to a Chase Bank account controlled by Americans Helping America. |

In violation of Title 18, United States Code, Sections 2 and 1343.

COUNT SEVENTEEN: [8 U.S.C. § 1324(a)(1)(A)(iv) & (B)(i) – Encouraging and Inducing Illegal Immigration for Private Financial Gain]

The Grand Jury further charges:

HELAMAN HANSEN,

defendant herein, between on or about January 19, 2014, and July 18, 2014, in the State and Eastern District of California, for the purpose of private financial gain, did encourage and induce an alien, to wit Victim 3, to reside in the United States after that alien's lawful visa expired, knowing and in reckless disregard of the fact that such residence in the United States was and would be a violation of law, in violation of Title 8, United States Code, Sections 2 and 1324(a)(1)(A)(iv) & (B)(i).

COUNT EIGHTEEN: [8 U.S.C. § 1324(a)(1)(A)(iv) & (B)(i) – Encouraging and Inducing Illegal Immigration for Private Financial Gain]

The Grand Jury further charges:

HELAMAN HANSEN,

defendant herein, between on or about August 10, 2014, and February 9, 2015, in the State and Eastern District of California, for the purpose of private financial gain, did encourage and induce an alien, to wit Victim 6, to reside in the United States after that alien's lawful visa expired, knowing and in reckless disregard of the fact that such residence in the United States was and would be a violation of law, in violation of Title 8, United States Code, Sections 2 and 1324(a)(1)(A)(iv) & (B)(i).

FORFEITURE ALLEGATION: [18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Criminal Forfeiture]

1. Upon conviction of one or more of the offenses alleged in Counts One through Sixteen of this Superseding Indictment, defendant HELAMAN HANSEN shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real and personal, which constitutes or is derived from proceeds traceable to such violations, including but not limited to a sum of money equal to the amount of proceeds traceable to such offenses, for which defendant is convicted.

2. If any property subject to forfeiture, as a result of the offenses alleged in Counts One through Sixteen of this Superseding Indictment, for which defendant is convicted:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to 28 U.S.C. § 2461(c), incorporating 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendant, up to the value of the property subject to forfeiture.

A TRUE BILL.

_______________________
FOREPERSON

PHILLIP A. TALBERT
United States Attorney

*No.* __________

2:16 - CR - 0024 MCE

**UNITED STATES DISTRICT COURT**

*Eastern District of California*

*Criminal Division*

THE UNITED STATES OF AMERICA

*vs.*

HELAMAN HANSEN

---

SUPERSEDING INDICTMENT

**VIOLATION(S):** 18 U.S.C. § 1341 – Mail Fraud (Thirteen Counts);
18 U.S.C. § 1343 – Wire Fraud (Three Counts);
8 U.S.C. § 1324(a)(1)(A)(iv) & (B)(i) – Encouraging and Inducing Illegal Immigration for Private Financial Gain (Two Counts);
18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Criminal Forfeiture

---

*A true bill,* **/s/ Signature on file w/AUSA**

*Foreman.*

*Filed in open court this* 2 *day*

*of* March *, A.D. 20* 17

*Clerk.*

---

*Bail, $* ______________ **NO PROCESS NECESSARY**

---

GPO 863 525

**United States v. HELAMAN HANSEN**
**Penalties for Superseding Indictment**
**2:16-CR-00024-MCE**

**Defendants**
**HELAMAN HANSEN** 2:16-CR-0024 MCE

**COUNTS 1 – 13:** **ALL DEFENDANTS**

VIOLATION: 18 U.S.C. § 1341 – Mail Fraud

PENALTIES: Maximum of 20 years in prison; or
Fine of up to $250,000; or both fine and imprisonment
Supervised release of not more than 3

SPECIAL ASSESSMENT: $100 (mandatory on each count)

**COUNTS 14 - 16:** **ALL DEFENDANTS**

VIOLATION: 18 U.S.C. § 1343 – Wire Fraud

PENALTIES: Maximum of 20 years in prison; or
Fine of up to $250,000; or both fine and imprisonment
Supervised release of not more than 3

SPECIAL ASSESSMENT: $100 (mandatory on each count)

**COUNTS 17 - 18:** **ALL DEFENDANTS**

VIOLATION: 8 U.S.C. § 1324(a)(1)(A)(iv) & (B)(i) – Encouraging and Inducing Illegal Immigration for Private Financial Gain

PENALTIES: Maximum of 10 years in prison; or
Fine of up to $250,000; or both fine and imprisonment
Supervised release of not more than 3

SPECIAL ASSESSMENT: $100 (mandatory on each count)

**FORFEITURE ALLEGATION:** **ALL DEFENDANTS**

VIOLATION: 981(a)(1)(C) and 28 U.S.C. § 2461 – Criminal Forfeiture

PENALTIES: As stated in the charging document