PHILLIP A. TALBERT
UNITED STATES ATTORNEY
ANDRÉ M. ESPINOSA
KATHERINE T. LYDON
ASSISTANT U. S. ATTORNEYS
501 I STREET, SUITE 10-100
SACRAMENTO, CA  95814

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br>    v.<br><br>HELAMAN HANSEN,<br><br>    Defendant. | CASE NO. 2:16-CR-0024 MCE<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS INDICTMENT<br><br>Date: December 14, 2017<br>Time: 10:00 am<br>Judge: Hon. Morrison C. England, Jr. |

After trial, a jury convicted Defendant Helaman Hansen (Defendant) of twelve counts of mail fraud (18 U.S.C. § 1341) (Counts 1-9; 11-13), three counts of wire fraud (18 U.S.C. § 1343) (Counts 14-16), and two counts of encouraging and inducing illegal immigration for private financial gain (8 U.S.C. §§ 1324(a)(1)(A)(iv) and (B)(i)) (Counts 17, 18).  More than six months later, and more than nine months after the deadline under Rule 12(b) passed, Defendant moves to dismiss Counts 17 and 18 of the superseding indictment, claiming the underlying criminal statutes are overbroad and void for vagueness under the First Amendment.  The Court should deny the untimely and frivolous motion.

First, Defendant's motion is grossly untimely.  On that basis alone, the Court should deny it.  Moreover, Defendant offers no explanation for why the Court should excuse his neglect.  The First Amendment is not a new development in the law and none of the cases on which Defendant relies were decided after the pretrial motion deadline in this case.  That this argument only recently occurred to Defendant is not good cause to excuse his untimeliness.  Second, even if the Court reaches the merits of Defendant's arguments, and it need not, the statutes at issue, when properly construed, are not plainly overbroad or unconstitutionally vague.  Accordingly, and for the following reasons, the Court should deny Defendant's motion.

## I.     FACTUAL AND PROCEDURAL SUMMARY

Defendant founded and ran Americans Helping America Chamber of Commerce ("AHA"), a purported nonprofit that, along with an affiliated Hansen-controlled organization, Native Hawaiians and Pacific Islanders ("NHPI"), claimed to provide advice and assistance to adult illegal aliens residing in California and elsewhere in navigating United States immigration laws.  AHA's business activities included the marketing, sale, and maintenance of "memberships" to victims of its fraudulent "Migration Program," an elaborate adult-adoption program that was based on the false promise that adult illegal aliens residing in the United States could achieve citizenship after being legally adopted by an American citizen and completing a list of additional tasks.  In reality, adult adoptions are not paths to citizenship.  To conceal the scheme and avoid detection by victims and others Defendant and his agents were evasive about the technical details and purported legal foundation of AHA's fraudulent Migration Program.  In some instances, Defendant told skeptics that AHA's fraudulent Migration Program was authorized under a United Nations law that superseded United States law.  Additionally, Defendant encouraged and induced two victims who were lawfully in the United States on visas – and participants in Defendant's fraudulent Migration Program (to whom Defendant has falsely promised citizenship) – to overstay their visas to ensure their participation in the program, from which Defendant financially benefited.

A federal grand jury in the Eastern District of California returned a superseding indictment on March 2, 2016, charging Hansen with thirteen counts of mail fraud (18 U.S.C. § 1341) (Counts 1-13), three counts of wire fraud (18 U.S.C. § 1343) (Counts 14-16), two counts of Encouraging and Inducing Illegal Immigration for Private Financial Gain (8 U.S.C. § 1324(a)(1)(A)(iv) & (B)(i)) (Counts 17, 18), and a criminal forfeiture allegation. CR 62.  A jury trial began on April 17, 2017, and, on May 9, 2017, the jury convicted Defendant on all counts in the superseding indictment, except for Count 10, which the government moved to dismiss following its case-in-chief. CR 107148.

After several continuances, sentencing is scheduled for December 14, 2017.  On November 9, 2017, Defendant filed a Motion to Dismiss Counts 17 and 18 of the superseding indictment.  CR 165.  The motion is scheduled to be heard on December 14, 2017.  See CR 165.  Defendant's motion asserts a constitutional challenge to 8 U.S.C. § 1324(a)(1)(A)(iv), which was also recently raised by a panel of the United States Court of Appeals for the Ninth Circuit in United States v. Evelyn Sineneng-Smith, No. 15-

10614. By stipulation of the parties, the Court ordered the United States to file this opposition to Defendant's motion on or before November 30, 2017. CR 171.

## II. ARGUMENT

### A. Defendant's Motion is Untimely and the Court Should Deny it Without Reaching the Merits

Defendant's motion is grossly untimely and the Court should deny it without reaching the merits. Rule 12(b)(3) of the Federal Rules of Criminal Procedure sets forth a list of motions that must be brought before trial. That list includes motions concerning "a defect in the indictment," including "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). Under Rule 12, a late-filed motion is untimely and may be denied on that basis alone. Fed. R. Crim. P. 12(c)(3). Upon a showing of good cause by the late-moving party, a court may but need not consider the merits of an untimely motion under Rule 12(b)(3). See Fed. R. Crim. P. 12(c)(3). Failure to bring timely motions under Rule 12(b)(3), or show good cause for relief from the Rule, results in waiver of those claims.[1] United States v. Buffington, 815 F.2d 1292, 1304 (9th Cir. 1987) ("As a general rule, claims of defects in an indictment must be raised prior to trial," or they are waived). See also United States v. Torres, 908 F.2d 1417, 1424 (9th Cir. 1990) (affirming the denial of a motion to suppress as untimely under Rule 12); United States v. Villasenor-Chavez, 560 F. App'x 653, 655 (9th Cir. 2014) (unpublished) (affirming denial of suppression motion as untimely when filed eleven days after the Rule 12(b) motion deadline).

Here, the Court ordered all pretrial motions under Rule 12(b) filed no later than February 2, 2017. CR 44. Defendant filed his pending motion to Dismiss Counts 17 and 18 of the superseding indictment on November 9, 2017, more than nine months late. Defendant makes no effort at all to state good cause to excuse his untimely motion. He mentions only the constitutional inquiry into 8 U.S.C. §

---

[1] Before 2014, Rule 12 contained a subsection stating: "[a] party waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets under Rule 12(c) or by any extension the court provides." See United States v. Scott, 705 F.3d 410, 415 (9th Cir. 2012). In 2014 subsection (e) was merged into subsection (c). See Advisory Committee Notes to 2014 Amendments to Rule 12. As amended, new paragraph (c)(3) "governs the review of untimely claims, previously addressed in Rule 12(e). Rule 12(e) provided that a party 'waives' a defense not raised within the time set under Rule 12(c). Although the term waiver in the context of a criminal case ordinarily refers to the intentional relinquishment of a known right, Rule 12(e) has never required any determination that a party who failed to make a timely motion intended to relinquish a defense, objection, or request that was not raised in a timely fashion. Accordingly, to avoid possible confusion the Committee decided not to employ the term 'waiver' in new paragraph (c)(3)." Id.

1324(a)(1)(A)(iv) recently initiated by the Ninth Circuit panel in <u>United States v. Evelyn Sineneng-Smith</u>, No. 15-10614.  Yet, that cannot justify his untimeliness.  A constitutional challenge to a criminal statute is perhaps unique among the collection of pretrial motions most typically raised under Rule 12(b).  However, the concepts of statutory overbreadth and vagueness are elementary and taught to thousands of first year law students every year across the country.  There is nothing so novel or obscure about those concepts as to make thoughtful reliance on them impossible without assistance from judges of the Ninth Circuit—especially here, where Defendant is represented by multiple experienced and able counsel.

The First Amendment is not a new development in the law.  Defendant could have, and should have, timely raised his constitutional challenge.  None of the cases on which he now relies was decided after the pretrial motion deadline.  That Defendant simply did not think of the argument until it recently came to his attention in a case currently before the Ninth Circuit does not constitute good cause to excuse the untimeliness of his motion.  Indeed, at least one other defendant in another Circuit managed to assert identical overbreadth and vagueness challenges—and did so more than *six years* ago.  See <u>United States v. Tracy</u>, 456 F. App'x 267, 271 (4th Cir. 2011) (denying First Amendment overbreadth and vagueness challenge to 1324(a)(1)(A)(iv), which supported defendant's conspiracy conviction under 1324(a)(1)(A)(v)(I)).  Here, Defendant simply failed to file a timely motion.

The mandatory pretrial motion requirement in Rule 12(b)(3) is designed to promote finality of motion practice by forcing litigants to make timely arguments so that courts may decide any pivotal or dispositive issues before investing judicial resources in trial.  See e.g., <u>United States v. Smith</u>, 866 F.2d 1092, 1097 (9th Cir. 1989) (observing that one purpose of Rule 12 is "conservation of judicial resources by facilitating the disposition of cases without trial"); <u>accord</u> <u>Davis v. United States</u>, 411 U.S. 233, 241 (1973).[2]  The Court should apply the plain language of Rule 12 in this instance, and enforce its

---

[2] <u>Davis</u> involved an earlier version of Rule 12.  <u>See</u> Advisory Committee Notes to 1974 and 2002 Amendments to Rule 12.  In <u>Davis</u>, the Supreme Court warned if defendants were allowed to flout the deadlines to bring mandatory pretrial motions under Rule 12, "there would be little incentive to comply with its terms when a successful attack might simply result in a new indictment prior to trial.  Strong tactical considerations would militate in favor of delaying the raising of the claim in hopes of acquittal, with the thought that if those hopes did not materialize, the claim could be used to upset an otherwise valid conviction at a time when reprosecution might well be difficult."  411 U.S. at 241.

4

deadlines. Defendant makes no effort to present good cause to excuse his untimely motion, which is more than nine months late. Consequently, the Court should deny the motion without reaching the merits.

**B.    8 U.S.C. §§ 1324(a)(1)(A)(iv) and (B)(i) Are Not Overbroad Under the First Amendment**

Even if the Court reached the merits of Defendant's argument, and it should not, the motion must fail because the statute at issue is not unconstitutionally overbroad or vague.

### 1. *The Overbreadth Doctrine*

Courts may invalidate a law for overbreadth under the First Amendment only if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." Washington State Grange v. Washington State Republican Party, 552 U.S. 442, 449 & n.6 (2008) (quotation marks omitted). "[M]anifestly," this doctrine is "strong medicine," and should be applied "sparingly and only as a last resort." Broadrick v. Oklahoma, 413 U.S. 601, 613 (1973). To determine whether a statute is overbroad, this Court must (1) construe the challenged statute to determine its reach; and (2) examine whether the statute "criminalizes a 'substantial amount' of expressive activity." Powell's Books, Inc. v. Kroger, 622 F.3d 1202, 1208 (9th Cir. 2010). An overbroad statute may be invalidated only if it is "not readily subject to a narrowing construction." Erznoznik v. City of Jacksonville, 422 U.S. 205, 216 (1975).

### 2. *The Reach of the Relevant Statute*

The "statute of conviction" at issue in this case is not 8 U.S.C. § 1324(a)(1)(A)(iv), standing alone. Rather, the superseding indictment charged and the jury found that Defendant acted "for the purpose of commercial advantage or private financial gain" under 8 U.S.C. § 1324(a)(1)(B)(i). Section 1324(a)(1)(B)(i) specifies a higher maximum sentence, and thus establishes a separate aggravated offense. See Apprendi v. New Jersey, 530 U.S. 466, 476, 490 (2000). Accordingly, the statutes of conviction are 8 U.S.C. §§ 1324(a)(1)(A)(iv) and (B)(i).

#### a.    *Elements*

As set forth in Ninth Circuit Model Criminal Jury Instruction 9.4, Section 1324(a)(1)(A)(iv) contains three elements:
- First, [*name of alien*] was an alien;

5

- Second, the defendant encouraged or induced [*name of alien*] to [come to] [enter] [reside in] the United States in violation of law; and
- Third, the defendant [knew] [acted in reckless disregard of the fact] that [*name of alien*]'s [coming to] [entry into] [residence in] the United States would be in violation of the law.

Further, as charged in this case, the defendant must have "the purpose of commercial advantage or private financial gain."  8 U.S.C. § 1324(a)(1)(B)(i).

### b. Meaning of "Encourage[ ]" and "Induce[ ]"

In support of his overbreadth claim, Defendant argues Section 1324(a)(1)(A)(iv) covers protected speech.  CR 165 at 3-5.  In fact, the statute does not restrict speech regarding immigration or other protected speech.  Instead, it prohibits actions and action-oriented speech that facilitate violations of the immigration laws. That construction comports with a common meaning of "encourage[ ]," is consistent with other provisions of Section 1324, and avoids the constitutional problems that Defendant's interpretation poses.

No reported decision applies Section 1324(a)(1)(A)(iv) to mere efforts to persuade, expressions of moral support, or abstract advocacy regarding immigration, without more.  Instead, in additional to the inevitable use of words, the cases "address[ ] acts of encouragement or inducement closely tied to" violations of immigration law.  See, e.g., United States v. Ndiaye, 434 F.3d 1270, 1297-98 (11th Cir. 2006) (supplying a social security number to which an alien is not entitled); United States v. Oloyede, 982 F.2d 133, 135-37 (4th Cir. 1992) (per curiam) (providing false documents for citizen applications); see also United States v. He, 245 F.3d 954, 955-56 (7th Cir. 2001) (escorting alien into the country). The statutory context of Section 1324(a)(1)(A)(iv) illuminates the meaning of "encourage[]."  See, e.g., Yates v. United States, 135 S. Ct. 1074, 1081-82 (2015) (interpreting statutory language based on "the specific context in which that language is used, and the broader context of the statute as a whole") (quotation marks and citation omitted).  In particular, all other provisions of Section 1324(a)(1)(A) prohibit specific activities that promote illegal immigration, including "bring[ing]," "transport[ing]," "mov[ing]," "conceal[ing], "harbor[ing]," or "shield[ing]" aliens.  Under the principle of noscitur a sociis—a word is known by the company it keeps— "encourage[ ]," as used in Section 1324(a)(1)(A)(iv), should likewise be interpreted to require specific action or speech advocating specific actions that facilitate an alien's coming to, entering, or residing in the United States illegally.  See

generally United States v. Williams, 553 U.S. 285, 294 (2008).  So understood, Section 1324(a)(1)(A) serves as a "catch-all" provision that covers only words that elicit actions other than "bring[ing]," "transporting," etc., that might facilitate illegal immigration.  Indeed, as the cases applying Section 1324(a)(1)(A)(iv) make clear, Sections 1324(a)(1)(A)(i)-(iii) leave uncovered other conduct that Section 1324(a)(1)(A)(iv) reaches, including providing aliens with false documents and social security cards, and, as here, fraudulently promising to secure legal immigration status through citizenship.

Interpreting Section 1324(a)(1)(A)(iv) in this manner comports with Altamirano v. Gonzales, 427 F.3d 586 (9th Cir. 2005).  Altamirano interpreted 8 U.S.C. § 1182(a)(6)(E)(i), which excludes from the United States any alien who "knowingly has encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law."  After Altamirano attempted to cross the border in a vehicle driven by her husband that concealed an illegal alien, the Board of Immigration Appeals found her inadmissible.  The Ninth Court reversed, holding that the "plain meaning" of the statute "requires an affirmative act of help, assistance, or encouragement." Id. at 592 (emphasis added).  The Circuit further concluded that because Altamirano did not "affirmatively act to assist" the illegal passenger (who had been concealed by others), "she did not engage in alien smuggling."  Id. at 592; see id. at 592-93 (prior cases involving alien smuggling have involved "some form of affirmative assistance to the illegally entering alien") (citing cases).  Altamirano also relied on "the well-established meaning of aiding and abetting" in criminal law, noting that "[a] defendant cannot be convicted of aiding and abetting absent an affirmative act of assistance in the commission of the crime."  Id. at 594.

Likewise, as used in Section 1324(a)(1)(A)(iv), "encourage[ ]" requires an affirmative act of encouragement that could facilitate or assist an alien in "com[ing] to, enter[ing], or resid[ing]" in the United States "in violation of law."[3]  Standing alone, moral support, attempts to persuade, or abstract advocacy of illegal immigration do not suffice.  So understood, Section 1324(a)(1)(A)(iv) resembles the doctrine of aiding and abetting under federal law, which renders "a person … liable … if (and only if) he

---

[3] Acts that *appear* to facilitate such conduct are also covered even if, as in this case, the assistance turns out to be fraudulent.  And offers of assistance – like offers to make an illegal alien a citizenship – are acts of encouragement too, even if the defendant never makes good.

7

… takes an affirmative act in furtherance of [the] offense." Rosemond v. United States, 134 S. Ct. 1240, 1245 (2014); accord Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 181 (1994) (18 U.S.C. § 2 applies to "those who provide knowing aid to persons committing federal crimes"); see also United States v. Montoy, 664 F. App'x 632, 634 (9th Cir. 2016) (unpublished) ("We have found sufficient evidence of aiding and abetting where the aider and abettor provided verbal encouragement of a crime and gave advice about how to commit the crime.") (citing United States v. Allen, 341 F.3d 870, 889 (9th Cir. 2003)).  Existing cases defining "encourage[ ]" under Section 1324(a)(1)(A)(iv) are largely consistent with this understanding.  See, e.g., United States v. Lopez, 590 F.3d 1238, 1249-52 (11th Cir. 2009) (defining "encouraging or inducing" to include the act of "helping" aliens come to, enter, or remain in the United States); DelRio-Mocci v. Connolly Properties Inc., 672 F.3d 241, 248 (3d Cir. 2012) ("encourage" requires "some affirmative assistance that makes an alien lacking lawful immigration status more likely to enter or remain in the United States than she otherwise might have been"); United States v. Fujii, 301 F.3d 535, 540 (7th Cir. 2002) ("To prove that Fujii 'encouraged or induced' the aliens, all that the government needed to establish was that Fujii knowingly helped or advised the aliens."); Oloyede, 982 F.2d at 137 ("'encouraging' relates to actions taken to convince the illegal alien to come to this country or to stay in this country"); Ndiaye, 434 F.3d at 1298 (supplying fake social security number to illegal alien is "encouraging" alien to reside here); He, 245 F.3d at 957 ("encourage" defined as "to knowingly instigate, help or advise"); United States v. Delgado-Ovalle, 2013 WL 6858499, at *6 (D. Kan. Dec. 30, 2013) (encouragement includes employment that is coupled with aggravating factors consistent with knowingly assisting an immigrant in maintaining an illegal residence).

But merely providing legal goods to illegal immigrants on the same terms available to others does not encourage their residence.  Instead, "encourage[ ]" requires substantial assistance (or offers of assistance) that the defendant expects to make an alien lacking lawful immigration status more likely to enter or remain in the United States than she otherwise would have been.  See DelRio-Mocci, 672 F.3d at 248; see also United States v. Khanani, 502 F.3d 1281, 1289 (11th Cir. 2007) (merely employing illegal aliens does not suffice to show knowing encouragement); Zavala v. Wal-Mart Stores, Inc., 393 F. Supp. 2d 295, 308 (D.N.J. 2005) (same); United States v. Henderson, 857 F. Supp. 2d 191, 208 (D.

Mass. 2012) (occasional employment coupled with advice about immigration law practices and consequences is "barely" sufficient); cf. United States v. Moreno, 561 F.2d 1321, 1323 (9th Cir. 1977) (foreman who drove illegal aliens from one job site to another did not transport them "in furtherance of" a violation of law).

Defendant also argues that the "induce[ ]" prong of Section 1324(a)(1)(A)(iv) targets protected speech. CR 165 at 3-5. As with "encourage[ ]," "induce[ ]" in Section 1324(a)(1)(A)(iv) requires more than passive discussion. See United States v. Rashkovski, 301 F.3d 1133, 1136-37 (9th Cir. 2002) (defendant "induced" women to travel to the United States when he offered to make and pay for the necessary travel arrangements). Such inducements may be either real or fraudulent. So understood, induce and encourage are related but not synonymous. Threats of force, for example, can induce an alien to remain in the United States but are not generally considered "encourage[ment]."

### c.   *Mens Rea*

The statute explicitly requires the government to prove that the defendant acted "knowing[ly] or reckless[ly]" with regard to the fact that the alien's "coming to, entry, or residence is or will be in violation of law." Additionally, although the statute does not specify that a defendant must "knowingly" encourage or induce an alien, "knowing" action is nonetheless required. One can perhaps encourage another unwittingly. But under Section 1324(a)(1)(A)(iv), a defendant must realize that his actions may "encourage[ ] or induce[ ]" another to "come to, enter, or reside" in the United States; otherwise, she cannot "know[ ]" or "recklessly disregard … the fact" that these potential consequences "[are] or will be in violation of the law[.]" Accordingly, Section 1324(a)(1)(A)(iv) covers only "knowing" encouragement or inducement. See He, 245 F.3d at 959; see also Elonis v. United States, 135 S. Ct. 2001, 2009 (2015) ("[O]ur cases have explained that a defendant generally must 'know the facts that make his conduct fit the definition of the offense[.]'") (quoting Staples v. United States, 511 U.S. 600, 608 & n.3 (1994)).

### d.   *Requirement of "[A]n Alien"*

Section 1324(a)(1)(A)(iv) is limited in another respect as well. The statute addresses one who "encourages or induces *an* alien." (emphasis supplied). Use of the term "an alien," rather than "any alien," suggests that a defendant's acts must be directed to a particular alien or aliens. Accordingly,

9

Section 1324(a)(1)(A)(iv) does not prohibit acts of encouragement directed to the general public. Cf. Ninth Circuit Model Criminal Jury Instruction 9.4 ("Second, the defendant encouraged or induced [name of alien] to [come to] [enter] [reside in] the United States in violation of law"); State v. Melchert-Dinkel, 844 N.W.2d 13, 23 (Minn. 2014) (statute that prohibits assisting, advising, or encouraging "another in taking the other's own life" refers to an individual, rather than a larger audience).

### e. The Meaning of "In Violation of Law"

Consistent with common usage, the term "in violation of law" refers to violations of both civil and criminal laws, including the civil enforcement provisions of the U.S. immigration laws. See, e.g., Melendres v. Arpaio, 784 F.3d 1254, 1258 (9th Cir. 2015) (referring to "violations of federal civil immigration laws"), cert. denied, 136 S. Ct. 799 (2016); see also United States v. Tracy, 456 F. App'x 267, 271 (4th Cir. 2011) ("When viewed in context, the statute cannot reasonably be read as referring to anything but violations of United States immigration law."). Accordingly, while aliens who lack authorization may not commit a crime by residing in the United States, Arizona v. United States, 567 U.S. 387, 407 (2012), their residence is still "in violation of law." See generally National Council of La Raza v. Department of Justice, 411 F.3d 350, 353 n.1 (2d Cir. 2005) ("Civil violations of immigration law include those violations – such as overstaying one's visa or entering the United States without proper documentation – that result in administrative proceedings").

### f. Purpose of Commercial Advantage or Private Financial Gain

Finally, Defendant's conviction required proof that he acted for "commercial advantage" or "private financial gain." 8 U.S.C. 1324(a)(1)(B)(i). Thus, the statutes of conviction exclude any "encourage[ment]" done "out of any feelings of charity or affection." United States v. Kim, 193 F.3d 567, 577 (2d Cir. 1999).

### 3. 8 U.S.C. 1324(a)(1)(A)(iv) and (B)(i) Do Not Criminalize Protected Speech and Are Not Overbroad Under the First Amendment

As set forth above, the Supreme Court has "vigorously enforced the requirement that a statute's overbreadth be substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." Williams, 553 U.S. at 292-93. Here, Section 1324(a)(1)(A)(iv) and (B)(i)'s "plainly legitimate sweep" is wide. The statutes target conduct that encourages illegal immigration for profit or

commercial advantage. They likewise cover actions that induce an alien to violate immigration law, including through fraud, that is undertaken for the same motives. Examples of potentially covered activities include (1) selling a border-crossing kit to aliens, including a map of "safe crossing" points and backpacks filled with equipment designed to evade border patrol; (2) duping foreign tourists into purchasing a fake "visa extension;" or (3) providing a "package deal" to foreign pregnant women who wish to give birth in the United States that includes a year of room and board, a six-month tourist visa, and instructions on how to overstay the visa without detection.

As for Defendant's claims of overbreadth, once the encourage prong is interpreted to prohibit action-oriented speech that facilitates coming to, entering, or residing in the United States illegally, his First Amendment claims evaporate. To be sure, some profit-generating activities that "encourage[ ] or induce[ ]" illegal immigration may involve speech. But "[t]he first amendment does not provide a defense to a criminal charge simply because the actor uses words to carry out his illegal purpose." United States v. Barnett, 667 F.2d 835, 842-43 (9th Cir. 1982). The map used in the mail order business described above, for example, constitutes speech but because it aims to facilitate illegal conduct, that speech is not protected.

Cases addressing aiding and abetting liability confirm this point. In United States v. Freeman, 761 F.2d 549, 552 (9th Cir. 1985), for example, the Ninth Circuit held that a tax protestor who assisted in preparing and filing false returns for others could properly be convicted of aiding and abetting tax fraud even if his convictions "rested on spoken words alone, [because] the false filing was so proximately tied to the speech that no First Amendment defense was established." In so holding, the Circuit observed that "the First Amendment is quite irrelevant if the intent of the actor and the objective meaning of the words used are so close in time and purpose to a substantive evil as to become part of the ultimate crime itself. In those instances, where speech becomes an integral part of the crime, a First Amendment defense is foreclosed even if the prosecution rests on words alone." Id. (citations omitted). Other cases reach the same result.[4]

---

[4] See Barnett, 667 F.2d at 842-43 (First Amendment did not protect defendant's sale of printed instructions for the manufacture angel dust); United States v. Meredith, 685 F.3d 814, 819-20 (9th Cir. 2012) (defendants who gave explicit instructions to customers on how to file fraudulent tax returns not immune from prosecution under First Amendment); Rice v. Paladin Enterprises, Inc., 128 F.3d 233, 242 (4th Cir. 1997) ("speech…that constitutes criminal aiding and abetting does not enjoy the protection of the First Amendment"); see generally Giboney v.

11

Section 1342(a)(1)(A)(iv) is not precisely equivalent to an aiding and abetting offense.  Yet, any differences do not affect the First Amendment analysis.  First, while federal aiding and abetting requires a completed crime, Barnett, 667 F.2d at 841-42, a Section 1342(a)(1)(A)(iv) offense is complete once the "encourag[ing]" or "induc[ing]" has occurred.  Section 1342(a)(1)(A)(iv), therefore, resembles an attempted aiding and abetting offense.  See generally Model Penal Code § 2.06(3)(a)(ii) (describing such an offense).  That difference is immaterial.  The First Amendment does not protect the act of mailing written instructions to a hitman, and those instructions do not become protected speech if they are accidentally delivered to the wrong address.  Likewise, Congress can prohibit speech that facilitates or induces an alien's coming to, entering, or residing in the United States illegally, whether or not the alien ultimately violates immigration law.

Second, under 18 U.S.C. § 2, a defendant must aid or abet the commission of a criminal offense, while Section 1342(a)(1)(A)(iv) covers "encourag[ing] and induc[ing]" both civil and criminal "violation[s] of law."  But, once again, that distinction is irrelevant.  The legislature may decide to regulate misconduct through civil rather than criminal penalties for many reasons, including a concern that the wrongdoers constitute a vulnerable population.  Likewise, it may reasonably determine that a person who encourages or induces civil wrongdoing is himself guilty of a criminal offense, especially when he does so for a profit.  Some states, for example, make possession of alcohol by minors a civil violation but criminalize "aid[ing] or assist[ing]" in furnishing alcohol to minors.  See, e.g., Me. Rev. Stat. tit. 28-a §§ 2051.1(A)(1) and 2081.1(A).  That reasonable choice should not dictate whether the adult who earns a profit by aiding and abetting the minor's violation can assert a First Amendment defense.  Counseling a particular minor on how to obtain alcohol is not "protected speech," and that conclusion should not turn on whether the minor himself has violated civil or criminal law.  Such speech is "of such slight social value as a step to truth that any benefit that may be derived from [it] is clearly outweighed by the social interest in order and morality."  Chaplinsky v. New Hampshire, 315 U.S. 568,

---

Empire Storage & Ice Co., 336 U.S. 490, 502 (1949) ( "[I]t has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed."); Williams, 553 U.S. at 298 ("Many long established criminal proscriptions…criminalize speech…that is intended to induce or commence illegal activities.") (citations omitted); United States v. Stevens, 559 U.S. 460, 468 (2010) ("speech integral to criminal conduct" is among the traditional classes of unprotected speech).

12

572 (1942).

### *a.  Section 1342(a)(1)(A)(iv) does not reach "political speech"*

Defendant argues Section 1342(a)(1)(A)(iv) "potentially infringes on one's ability to advocate for undocumented people to pursue staying in the United States despite losing legal status." CR 165 at 3. The argument presumes that encourage must be capaciously defined to include any generally directed speech that inspires illegal immigrants with courage, spirit, or hope, or spurs them on. Once that faulty premise is rejected, it becomes clear that Section 1342(a)(1)(A)(iv) does not aim to regulate protected speech at all, and does not facially target particular disfavored viewpoints. Instead, Section 1342(a)(1)(A)(iv) prohibits conduct that facilitates or induces illegal immigration, and any speech that it prohibits is not protected under the First Amendment. See, e.g., R.A.V. v. City of St. Paul, 505 U.S. 377, 389 (1992) (laws against treason are directed towards conduct even though they may be violated by telling the enemy defense secrets).

Section 1324(a)(1)(A)(iv) is directed at conduct that is almost always accompanied by speech; not speech alone. The statute does not punish any person because he is conveying a particular message. Where a general prohibition "does not target conduct on the basis of its expressive content, acts are not shielded from regulation merely because they express a [particular] idea or philosophy." Id. at 389-90. Thus, even assuming that actions that violate Section 1324(a)(1)(A)(iv) convey a coherent message, Section 1324(a)(1)(A)(iv) may nonetheless proscribe them because it was not enacted to stifle any particular point of view. See also id. at 390 (regulations that selectively proscribe unprotected speech are valid "so long as the nature of the content discrimination is such that there is no realistic possibility that official suppression of ideas is afoot."). In sum, properly construed, Section 1324(a)(1)(A)(iv) is not substantially overbroad. See, e.g., Milavetz, Gallop & Milavetz, P.A. v. United States, 559 U.S. 229, 248 (2010) (narrow construction that avoids First Amendment issues is "not merely a plausible interpretation but the more natural one"). The Court should deny Defendant's motion to dismiss.

### C.  Section 1342(a)(1)(A)(iv) Is Not Vague as Applied to Defendant, Nor Can He Argue it is Vague as Applied to Others

The "[v]agueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment. A conviction fails to comport with due process if the statute under

13

which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." Williams, 553 U.S. at 304.  When a law burdens First Amendment rights, "a more stringent vagueness test should apply" "[b]ut perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity."  Id. at 304 (citations and quotations omitted); Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495 (1982).

Defendant claims Section 1324(a)(1)(A)(iv) is vague as applied to his conduct.  The argument fails because a person who: (i) knowingly charges immigrants money to pursue a non-existent remedy; (ii) pays those immigrants stipends to work for him (essentially discounts from the fraud proceeds) to assure their continued participation in his program and to lull them; (iii) repeatedly urges them not to return home in compliance with their visa conditions; and (iv) does so for private financial gain, can be expected to know he thereby "encourages" or "induces" them to remain in the United States "in violation of law."  See, e.g., Tracy, 456 F. App'x at 272 ("a person of ordinary intelligence would understand that assisting [ ] non-citizens indirectly to enter the United States" is proscribed).

Defendant cannot argue that Section 1324(a)(1)(A)(iv) is vague as applied to others.  "A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." Hoffman Estates, 455 U.S. at 495.  "That rule makes no exception for conduct in the form of speech.  Thus, even to the extent a heightened vagueness standard applies, a plaintiff whose speech is clearly proscribed cannot raise a successful vagueness claim under the Due Process Clause of the Fifth Amendment for lack of notice.  And he certainly cannot do so based on the speech of others." Humanitarian Law Project, 561 U.S. at 20 (citation omitted).  Even if Defendant could properly assert a general vagueness argument based on an improperly broad interpretation of the terms "encourage[ ]" and "induce[ ]", which he cannot, the proper remedy is to narrow the definitions of those terms, not to invalidate the statute.  See Skilling v. United States, 561 U.S. 358, 403 (2010) (Supreme Court case law "requires us, if we can, to construe, not condemn, Congress' enactments."); see, e.g., United States v. King, 608 F.3d 1122, 1128 (9th Cir. 2010) (this Court has "cabined the dictionary definition of 'associate' in three ways to avoid its potentially vague outer boundaries").  A judicial decision clarifying the proper meanings of "encourage[ ]" and "induce[ ]" suffices to provide

14

public notice regarding the scope of the statute and thereby obviates any vagueness concerns.  See United States v. Lanier, 520 U.S. 259, 266 (1997) ("clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute") (citations omitted).  The Court should deny Defendant's motion to dismiss.

### III.     CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny Defendant's Motion to Dismiss Counts 17 and 18 of the superseding indictment.

Dated: November 30, 2017                                            PHILLIP A. TALBERT
                                                                                        United States Attorney

                                                                                        */s/ André M. Espinosa*
                                                                                        ANDRÉ M. ESPINOSA
                                                                                        KATHERINE T. LYDON
                                                                                        Assistant U.S. Attorneys