HEATHER E. WILLIAMS, #122664
Federal Defender
TIMOTHY ZINDEL, #158377
SEAN RIORDAN, #255752
Assistant Federal Defender
801 I Street, 3rd Floor
Sacramento, CA  95814
Tel: 916-498-5700/Fax 916-498-5710
timothy_zindel@fd.org


Attorneys for Defendant
HELAMAN HANSEN

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>       v.<br><br>HELAMAN HANSEN<br><br>            Defendants. | Case No. 2:16-CR-00024 MCE<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS COUNTS 17 AND 18 ON CONSTITUTIONAL GROUNDS**<br><br>Date:    December 14, 2017<br>Time:   10:00 a.m.<br>Judge:  Hon. Morrison C. England. |

   This motion is timely because it raises a jurisdictional defect in the prosecution, among other reasons.  On the merits, as the government's own arguments show, § 1324(a)(1)(A)(iv) is unconstitutionally vague and overbroad on its face.  It reaches significant amounts of speech which, like Mr. Hansen's speech, do nothing more than encourage an individual to violate a *civil law*, as opposed to a criminal law.  In any event, as applied to the facts of the case, Mr. Hansen's convictions cannot stand because the facts show that at most he encouraged people to violate a civil provision of immigration law.  Notably, the government does not argue that Mr. Hansen

Hansen Reply ISO Mot. to Dismiss           -1-

encouraged or induced anyone to violate a criminal provision of immigration law.  This is accordingly an easy case on the merits.[1]

**I. Mr. Hansen's motion is timely.**

The government argues that this motion is untimely because it was filed after February 2, 2017.  That argument ignores basic temporal logic.  The superseding indictment containing counts 17 and 18 was filed on March 2, 2017.  (Doc. No. 62.)  So counts 17 and 18 did not even exist as of February 2.  Yet by the government's logic that any motion filed after February 2 is untimely, it would have been impossible to ever file a timely motion to dismiss based on defects in counts 17 and 18.  Needless to say, that cannot be true.

In any event, this motion is timely because it raises a jurisdictional defect as to counts 17 and 18.  Rule 12(b)(2) states that, "[a] motion that the court lacks jurisdiction may be made at any time while the case is pending."  Supreme Court and Ninth Circuit law recognize that an unconstitutional charge suffers from a jurisdictional defect.  *See United States v. Johnston*, 199 F.3d 1015, 1019 n.3 (9th Cir. 1999) (noting that while "[w]hat constitutes such a jurisdictional defect … is not entirely clear: this circuit has held that such claims are limited to claims that the statute is facially unconstitutional; or that the indictment failed to state a valid claim; or vindictive prosecution; or possibly selective prosecution"); *United States v. Broce*, 488 U.S. 563, 569 (1989) (preserving jurisdictional claim exception, in context of post-guilty plea challenge, for cases in which the district court could determine that the government lacked the power to bring the indictment at the time of conviction from the face of the indictment or from the record); *Menna v. New York*, 423 U.S. 61 (1975) (holding that a guilty plea did not foreclose the

---

[1] The government calls the motion "frivolous."  (Opp. at 1:20.)  This appears to be a case of frivolous use of the term "frivolous."  While "frivolous" has varying meanings depending on the context, at its core it refers to a legally or factually baseless argument.  *See Intamin Ltd. v. Magnetar Technologies, Corp.*, 483 F.3d 1328, 1338 (9th Cir. 2007).  A panel of Ninth Circuit judges raised the very issues addressed by Mr. Hansen.  *See United States v. Sineneng-Smith*, Ninth Cir. Case No. 15-10614 (Doc. No. 46) (inviting amicus briefing by various organizations). In response, numerous organizations subsequently signed on to eight different amicus briefs supporting positions the same as or similar to the positions Mr. Hansen takes here.  "An allegation of a frivolous [motion] should not be made cavalierly."  *Nordberg v. Telsmith, Inc.*, 82 F.3d 394, 398 (10th Cir. 1996).

Hansen Reply ISO Mot. to Dismiss -2-

defendant's right to show "the State is precluded by the United States Constitution from haling a defendant into court on a charge").  There is accordingly a clear basis under Rule 12(b)(2) and long-standing authority to hear this motion now.

**II.   Mr. Hansen's § 1324 convictions should be vacated as unconstitutional.**

**A.   The government does not dispute that § 1324(a)(1)(A)(iv) reaches encouragement of violations of civil immigration law.**

One of the primary aspects of the overbreadth of § 1324(a)(1)(A)(iv) is that it purports to criminalize speech that does nothing more than "encourage" a violation of the purely civil provisions of immigration law.  Mr. Hansen's case provides an example of this overbreadth, for neither Manu Nailati nor Epeli Vosa committed a crime by overstaying their visas.  The government recognizes that overstaying a visa is not a crime: "aliens who lack authorization may not commit a crime by residing in the United States." (Opp. at 10:12-13.)  Indeed, the Ninth Circuit has stated that none of the common criminal immigration statutes "criminalizes mere unlawful presence" and no other "federal criminal statute mak[es] unlawful presence in the United States, alone, a federal crime[.]" *Martinez-Medina v. Holder*, 673 F.3d 1029, 1036 (9th Cir. 2011).  Thus it is indisputable that not all violations of immigration law are criminal.

The government does not suggest that the statute should be construed to exclude encouragement of civil immigration violations.  To the contrary, it explicitly argues that the statute "refers to violations of both civil and criminal laws, including the civil enforcement provisions of the U.S. immigration laws." (Opp. at 10:8-9.)  This view of the statute proves Mr. Hansen's argument that the statute is overbroad.  In order to have even a chance of surviving constitutional review, a statute like § 1324(a)(1)(A)(iv) that criminalizes speech may only reach "speech integral to criminal conduct." *United States v. Osinger*, 753 F.3d 939, 946 (9th Cir. 2014); *see also Giboney v. Empire Storage & Inc. Co.*, 336 U.S. 490, 498 (1949) (noting that "freedom for speech" does not "extend[] its immunity to speech or writing used as an integral

Hansen Reply ISO Mot. to Dismiss                -3-

part of conduct in violation of a valid *criminal* statute") (emphasis added).  The government cites no authority for the proposition that Congress may criminalize speech that encourages mere non-criminal violations of the law.

While the government argues that liability under § 1324(a)(1)(A)(iv) "resembles the doctrine of aiding and abetting under federal law" (Opp. at 7:24-25), all of the authority cited for that point concerns aiding and abetting the violation of other *criminal* laws.  (Opp. at 8:1-7.) There is no legal foundation for supposed criminal liability that is based on aiding and abetting someone to violate a civil provision of law.  Accordingly, the statute is overbroad at the very least because it purports to criminalize substantial amounts of speech that are undoubtedly protected under the First Amendment.

### B. The aggravating element concerning "commercial advantage or private financial gain" does not change the analysis.

The government argues that because Mr. Hansen was convicted of acting "for the purpose of commercial advantage or private financial gain," which results in a higher statutory maximum, he was convicted of a "separate aggravated offense."  (Opp. at 5.)  Though this may be true under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), it does not change the analysis. Regardless of whether speech "encouraging or inducing" illegal immigration has a financial purpose, it may also have another purpose – such as, in this case, expressing a deeply held (but incorrect) idea about how the immigration system should function.  *See Board of Trustees of States University of New York v. Fox*, 492 U.S. 469, 481 (1989) ("[A]lthough the principal attack upon the resolution concerned its application to commercial speech, the alleged overbreadth (if the commercial-speech application is assumed to be valid) consists of its application to non-commercial speech, and that is what counts."); *XXL of Ohio, Inc. v. City of Broadview Heights*, 341 F.Supp.2d 765, 779 (N.D. Ohio 2004) ("When an ordinance restricts both commercial and non-commercial speech, however, a party whose purely commercial speech has been sanctioned

may assert the non-commercial speech rights of others by using the overbreadth doctrine."). Even if there is a financial purpose, that also does not change the fact that the statute criminalizes a substantial amount of speech that is not integral to criminal conduct, but rather relates only to purely civil aspects of immigration law. Thus, any financial motivation behind Mr. Hansen's speech does not affect the analysis under the First Amendment.

### C. The statute's "knowing or reckless" mens rea fails to meet the intent standard that would be required to criminalize speech integral to illegal conduct.

Even assuming for the sake of argument that the § 1324(a)(1)(A)(iv) were not overbroad because it purports to criminalize speech pertaining to non-criminal violations of law, it would be overbroad because of its "knowing or reckless" mens rea. The Supreme Court has indicated that a statute criminalizing speech that encourages illegal conduct may be overbroad if it fails to require "intent" that such illegal conduct (or harm) actually occur. *See United States v. Williams*, 553 U.S. 285, 299-300 (2008) ("[T]he term 'promotes' does not refer to abstract advocacy, such as the statement 'I believe that child pornography should be legal' or even 'I encourage you to obtain child pornography.' It refers to the recommendation of a particular piece of purported child pornography *with the intent of initiating a transfer*.") (emphasis added); *see also Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) (noting that for incitement to be sanctioned criminally it must be "*directed to* inciting or producing imminent lawless action") (emphasis added). So too has the Ninth Circuit. *See Osinger*, 753 F.3d at 947 (holding that "[a]ny expressive aspects of Osinger's speech were not protected under the First Amendment because they were 'integral to criminal conduct' in *intentionally* harassing, intimidating or causing substantial emotional distress" to his ex-girlfriend) (emphasis added). The government states that § 1324(a)(1)(A)(iv) requires only that the "government prove that the defendant acted 'knowing[ly] or reckless[ly]'' with regard to the fact that the alien's 'coming to, entry, or

residence is or will be in violation of the law.'" (Opp. at 9:13-15.) Because by the government's own reckoning, the statute does not require an "intent" that the alien violate the law, the statute is unconstitutionally overbroad.

### D. The statute reaches a substantial amount of speech that includes no conduct.

The government's argument that the statute reaches only speech-related conduct is not persuasive. Certainly some of the government's authority found a violation of the statute based on conduct that went beyond mere speech. But other of the government's authority show that mere speech is sufficient to violate the statute. *See, e.g., United States v. Fujii*, 301 F.3d 535, 540 (7th Cir. 2002) ("To prove that Fujii 'encouraged or induced' the aliens, all that the government needed to establish was that Fujii knowingly helped or *advised* the aliens.") (emphasis added). The Ninth Circuit's definition of "encourage or induce" also leaves ample room for speech that includes no conduct. "[T]o encourage" means "to inspire with courage, spirit, or hope ... to spur on ... to give help or patronage to." *United States v. Thum*, 749 F.3d 1143, 1147 (9th Cir. 2014) (quoting *United States v. He*, 245 F.3d 954, 960 (7th Cir.2001) (quoting Merriam Webster's Collegiate Dictionary 381 (10th ed.1996))). Clearly one case "inspire with courage, spirit, or hope" and "spur on" with words alone. Indeed, that was the government's theory at trial as to how Mr. Hansen violated the statute – it was his words to Mr. Nailati and Mr. Vosa that purportedly convinced them to overstay their visas. Thus, § 1324(a)(1)(A)(iv) reaches a substantial amount of protected First Amendment speech.

### E. As applied to Mr. Hansen, the statute is unconstitutional.

The government makes little effort to show how the statute is not overbroad as applied to Mr. Hansen's actual speech, focusing instead on a collateral as-applied vagueness issue. As discussed above, overstaying a visa is a violation of civil law, not of criminal laws. *See* 8 U.S.C.A. § 1227(a)(1)(B) ("Any alien who is present in the United States in violation of this

chapter or any other law of the United States, or whose nonimmigrant visa (or other documentation authorizing admission into the United States as a nonimmigrant) has been revoked under section 1201(i) of this title, is deportable.).  The government does not claim that Mr. Hansen induced or encouraged anyone to violate criminal laws.  Thus, Mr. Hansen's speech was not integral to criminal conduct.  As this exception did not apply to his speech, his speech was protected under the First Amendment on an as-applied basis.

### III. Conclusion.

For the foregoing reasons, and the reasons set out in Mr. Hansen's original moving papers, Mr. Hansen's convictions on counts 17 and 18 should be vacated.

Respectfully Submitted,

HEATHER E. WILLIAMS
Federal Defender

Dated:   December 7, 2017         /s/ *S. Riordan & T. Zindel*
SEAN RIORDAN & TIM ZINDEL
Assistant Federal Defenders
Attorneys for HELAMAN HANSEN