PHILLIP A. TALBERT
United States Attorney
ANDRÉ M. ESPINOSA
KATHERINE T. LYDON
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>HELAMAN HANSEN,<br><br>　　　　Defendant. | CASE NO. 2:16-CR-0024 MCE<br><br>GOVERNMENT'S REPLY TO DEFENDANT'S SUPPLEMENTAL BRIEFING IN SUPPORT OF HIS MOTION TO DISMISS AND HIS SENTENCING MEMORANDUM<br><br>Date: December 14, 2017<br>Time: 10:00 am<br>Judge: Hon. Morrison C. England, Jr. |

　　In his reply and supplemental reply to the government's opposition to his Motion to Dismiss Counts 17 and 18 of the Superseding Indictment, Defendant Helaman Hansen ("Hansen") argues his motion was timely, when, in fact it was not. Hansen also asserts his motion raises a jurisdictional challenge he may bring at any time, and that the government should be estopped from defending the statute on it merits. All of his claims are meritless and the Court should deny Hansen's motion to dismiss.

　　Hansen has also filed a supplement to his sentencing memorandum in which he: (i) offers a religious explanation for his swastika tattoo; (ii) asserts that his second mental health expert (like his original discredited expert) is merely sloppy and did not intentionally disregard Hansen's cross-examination and other testimony; and (iii) attaches 76 pages of irrelevant material demonstrating nothing more than Hansen's already known ability to convert his loquaciousness into writing, and his unhappiness over being convicted for his crimes. None of that irrelevant material supports imposition of a sentence outside of the correct Guideline range in this case.

A.  **Hansen's Reply and Supplemental Reply Do Not Support His Motion to Dismiss and Do Not Alter the Fact that His Motion is Untimely and Forfeited**

First, Hansen filed his motion after the deadline for pre-trial motions under Rule 12(b)(3)(v) and (c) passed. At the latest, Hansen was required to file this motion before the start of his trial. See Fed. R. Crim. P. 12(c). Instead, he filed it more than six months after a jury convicted him at trial. Hansen's trial began on April 17, 2017. CR 107. Seven months later, on November 9, 2017, he filed this motion to dismiss. CR 165. The motion is untimely and Hansen has forfeited his claim. See Fed. R. Crim. P. 12(c); United States v. Buffington, 815 F.2d 1292, 1304 (9th Cir. 1987) ("As a general rule, claims of defects in an indictment must be raised prior to trial," or they are waived). See also Yakus v. United States, 321 U.S. 414, 444 (1944) ("a constitutional right may be forfeited in criminal … cases by the failure to make timely assertion of the right…."). Accordingly, the Court should deny Hansen's motion.[1]

Second, Hansen's argument that his claim is jurisdictional and thus not subject to the pretrial deadline in Rule 12 also fails. Hansen cites no cases that actually support his argument that a facial challenge to the constitutionality of a statue is jurisdictional and within Rule 12(b)(2). Instead, he offers an incomplete quotation of dicta from a footnote in United States v. Johnston, and omits the fact that the government conceded in that case that the court should reach the merits of the defendant's argument, reliving the court of the obligation to decide the question of any alleged "'jurisdictional defect.'" United States v. Johnston, 199 F.3d 1015, 1020 n.3 (9th Cir. 1999). Ruminations on an undecided issue in a written opinion is not a holding that binds this or any other Court.

Moreover, Johnston did not involve a challenge to the constitutionality of the statute of conviction and cannot support the broad proposition Hansen asserts. See CR 175 at 2. Rather, Johnston merely holds that a defendant who *pleads guilty* – thus extinguishing his right to assert constitutional challenges arising prior to his plea, see Tollett v. Henderson, 411 U.S. 258, 267 (1973) – does not relinquish the right to challenge on appeal the jurisdictional basis for his prosecution. Here, Hansen was convicted after a jury trial. He was entitled to bring this or any other pre-trial challenge asserting a

---

[1] In its opposition, the government mistakenly cited the pretrial motions cutoff date applicable to the original indictment, which did not include Counts 17 and 18. Of course, as Hansen asserts, that date cannot control the outcome here. However, Hansen ignores that the error does not alter the substantive analysis or the outcome. In the absence of a pretrial motion deadline set by the Court, the deadline is the start of trial. See Fed. R. Crim. P. 12(c). Hansen filed his motion months after a jury convicted at trial. Thus, it is untimely.

defect in the prosecution or indictment. He did not do so and cannot show good cause for that failure. Thus, he has forfeited the claim in this Court.

Likewise, the other authority on which Hansen relies in inapposite. In <u>Menna v. New York</u>, the Supreme Court held that an actual double jeopardy claim, which the state conceded was "a strong one on the merits," was not waived by the defendant's guilty plea. 423 U.S. 61, 63 n. 1 (1975). Like <u>Johnston</u>, <u>Menna</u> is focused on the effect of a defendant's guilty plea, not the defendant's failure to timely challenge the indictment under Rule 12. Indeed, the defendant in <u>Mena</u> also moved unsuccessfully to dismiss the indictment on double jeopardy grounds in the district court before pleading guilty. <u>Id.</u> at 61. <u>Mena</u> did not involve the question presented in this case and does not control this Court's analysis.

Additionally, like <u>Menna,</u> <u>United States v. Broce</u>, 488 U.S. 563, 565 (1989), dealt with the specific context of a double jeopardy challenge post-guilty plea. In <u>Broce</u>, the Supreme Court applied the well-established rule barring collateral attack on a guilty plea, found that exceptions to that rule were inapplicable, and held that the defendants' double jeopardy challenges were foreclosed by their guilty pleas and convictions. 488 U.S. 563, 565 (1989). Neither case construes Rule 12(b)(2), neither contain the words "jurisdictional" or "jurisdiction," and neither concern challenges to the constitutionality of the statute of conviction.

Hansen cites no case characterizing a challenge to the constitutionality of a statue as a challenge to the Court jurisdiction under Rule 12(b)(2). Such challenges might include a challenge to personal jurisdiction involving a claim that the defendant did not commit the crime in the charging district and that no other facts establish proper venue. They might also include a challenge to subject matter jurisdiction involving a claim that Congress improperly enacted a statute, or that a statute was being applied retroactively to a defendant. However, Hansen's overbreadth claim is simply an argument that the indictment "fail[s] to state an offense," which must be brought before trial. <u>See</u> Fed. R. Crim. P. 12(b)(3)(v) and (c). The Court should deny Hansen's motion as untimely.

Finally, in a supplemental reply filed yesterday, Hansen argues the government should be estopped from defending the constitutionality of 8 U.S.C. §§ 1324(a)(1)(A)(iv) and (B)(i) on the merits because, at the charge conference during Hansen's trial, the government urged the Court to employ the applicable Ninth Circuit Model Criminal Jury Instruction for the statute and not the re-written version

Hansen proposed.  Hansen did not assert this argument in his initial moving papers or in his first reply.  Rather, he asserts it now, for the first time, in a *second* reply brief.  The argument is therefore waived.  See Bazuaye v. INS, 79 F.3d 118, 120 (9th Cir. 1996) ("Issues raised for the first time in the reply brief are waived.").

More important, the argument fails on the merits.  The claim ignores that the Court's ruling on Hansen's proposed jury instruction was not a ruling on the merits of the constitutional challenge he now asserts.  Rather, the Court rejected Hansen's proposed jury instruction – based on an out-of-Circuit opinion – because it found the applicable Ninth Circuit "pattern instruction states what the law is very clearly."  CR 183 at 1816:6-7.  Indeed, Hansen did not claim that the statute was constitutionally overbroad, requiring the modification.  Rather, he asserted that the Court should disregard the Ninth Circuit instructions in favor of Hansen's re-written instruction based on out-of-Circuit-law.  Id. at 1813:25-1814:14.  The Court properly rejected that argument.  Accordingly, there is no legal basis for Hansen's estoppel argument and the Court should dismiss it.

Hansen's argument, while meritless, highlights the rationale for strictly enforcing the mandatory pretrial motion requirement in Rule 12(b)(3), which is designed to force litigants to make timely arguments so courts may decide pivotal or dispositive issues before investing judicial resources in trial.  See e.g., United States v. Smith, 866 F.2d 1092, 1097 (9th Cir. 1989) (observing that one purpose of Rule 12 is "conservation of judicial resources by facilitating the disposition of cases without trial"); accord Davis v. United States, 411 U.S. 233, 241 (1973).

In Davis, the Supreme Court warned if defendants were allowed to ignore deadlines to bring mandatory pretrial motions under Rule 12, "there would be little incentive to comply with its terms when a successful attack might simply result in a new indictment prior to trial.  Strong tactical considerations would militate in favor of delaying the raising of the claim in hopes of acquittal, with the thought that if those hopes did not materialize, the claim could be used to upset an otherwise valid conviction at a time when reprosecution might well be difficult."  411 U.S. at 241.

The tactical gamesmanship the Supreme Court warned of in Davis is unfolding here.  If Hansen had brought a timely motion, this Court would have had the opportunity to consider the issues about which he now complains before trial, before the charge conference, and with the benefit of careful

4

briefing. In such a case, the Court might have taken any one of a variety of steps including, potentially deciding Hansen's jury instruction argument differently. Likewise, if Hansen had timely asserted his motion, the government could have reacted on the basis of Hansen's arguments and the Court's ruling, and before it devoted significant resources at a trial that spanned weeks and involved approximately 30 witnesses. Accordingly, the Court should affirm the principles underlying the deadlines in Rule 12 and deny Hansen's motion as untimely.

### B. None of the Irrelevant Material Hansen Provides in his Supplemental Sentencing Memorandum and 100 Pages of Attachments Supports Imposition of a Sentence Outside of the Applicable Guideline Range

Hansen attaches to a supplemental sentencing memorandum a declaration from his counsel in which counsel asserts: (i) Hansen's purported religious explanation for his swastika tattoo; and (ii) Hansen's second mental health expert's assertion that, contrary to his written report, the expert actually reviewed Hansen's entire trial testimony in preparing his report, and not just Hansen's direct testimony from a single day of his two-day testimony. Also attached to the supplemental memorandum is the report and CV of Hansen's original, discredited expert. Finally, Hansen also attaches 76 pages of irrelevant material demonstrating his unhappiness over being convicted for his crimes. None of that irrelevant material supports imposition of a sentence outside of the correct Guideline range in this case.

Through his counsel, Hansen asserts his swastika tattoo was a youthful mistake. He claims he permitted a friend to select and tattoo the Nazi symbol on his arm, unaware of its political meaning. Hansen was born in 1952 and would have been 14 years old in or about 1966, approximately twenty years after the conflagration of World War II. See PSR at 2. It seems unlikely that Hansen would have been unaware of the political meaning of the symbol at the time, or that in the ensuing years he would have failed to cover or remove the swastika tattoo—especially in light of his claimed embarrassment over the mark. See CR 184-1 at ¶5. In light of Hansen's many lies throughout the investigation and prosecution of this matter, the government is skeptical of Hansen's explanation. In any event, the matter has very little bearing on the appropriate sentence to be imposed.

Also through counsel, Hansen's second expert, Dr. Lin, admits to a similar sloppiness and lack of care that undermined the credibility of Hansen's initial expert, Dr. Weber. Despite the clear and definitive list of "Sources of Information" in Dr. Lin's report, see CR 177-1 at 1-2, stating that he relied

5

only on the "Transcription of Direct Testimony of Mr. Helaman Hansen on 05/03/2017," Dr. Lin, like Dr. Weber at trial, now admits sloppiness in his evaluation of Hansen and claims he actually reviewed all of Hansen's trial testimony. Dr. Lin's admitted sloppiness calls into question his conclusions concerning Hansen.

Additionally, perhaps in an effort to bolster Dr. Weber's disastrous testimony, Hansen attaches Dr. Weber's report and CV to his supplemental sentencing memorandum. Neither document provides a basis for the Court to credit Dr. Weber's thoroughly discredited "expert" opinion. Dr. Weber's trial testimony speaks for itself. Under cross-examination, Dr. Weber was unmasked as a purveyor of extreme sloppy and unreliable work, upon which no court should rely.

Finally, the 76 pages of irrelevant material Hansen attaches to his supplemental memo only weigh in favor of a sentence within the applicable Guideline range. Those documents demonstrate that Hansen is unhappy his criminal scheme was discovered, he is unhappy a jury convicted him of his crimes, and he is unapologetic and desperate to avoid responsibility for the injuries he inflicted on his victims. None of that irrelevant material supports imposition of a sentence outside of the correct Guideline range in this case. To the contrary, it weighs in favor of a Guideline sentence.

## II.　CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny Defendant's Motion to Dismiss Counts 17 and 18 of the Superseding Indictment, and impose a sentence of 262 months, the low-end of the applicable Guideline range.

Dated: December 13, 2017

PHILLIP A. TALBERT
United States Attorney

*/s/ André M. Espinosa*
ANDRÉ M. ESPINOSA
KATHERINE T. LYDON
Assistant U.S. Attorneys

6