McGREGOR W. SCOTT
United States Attorney
ANDRÉ M. ESPINOSA
KATHERINE T. LYDON
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone:  (916) 554-2700

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                          Plaintiff,<br><br>                    v.<br><br>HELAMAN HANSEN,<br><br>                          Defendant. | CASE NO.  2:16-CR-0024 MCE<br><br>AMENDED STIPULATION REGARDING BAIL PENDING APPEAL PURSUANT TO 18 U.S.C. § 3143(B) |

**STIPULATION**

Plaintiff United States of America, by and through its counsel of record, and defendant Helaman Hansen ("Hansen"), by and through his counsel of record, hereby stipulate and agree as follows:

1.     On May 9, 2017, a jury convicted Hansen of twelve counts of mail fraud, three counts of wire fraud, and two counts of encouraging and inducing illegal immigration for private financial gain. On December 14, 2017, the Court sentenced Hansen to a term of 240 months imprisonment.  Hansen timely filed an appeal.

2.     The United States intends to defend Hansen's convictions and sentences on all counts on appeal.  The United States does not consider any of the issues Hansen has raised on appeal to be meritorious.

3.     However, because the United States considers the lower standard for release pending appeal met with respect to the two counts of conviction for encouraging and inducing illegal immigration for private financial gain, and cognizant of the ongoing public health emergency, as

discussed below, the United States does not oppose Hansen's temporary release to supervision during the pendency of his appeal.

4.     One of the issues presented in Hansen's appeal is whether Title 8, United States Code, section 1324(a)(1)(A)(iv) (inducement of illegal immigration) is unconstitutionally overbroad in violation of the First Amendment.  The Ninth Circuit ordered appellate proceedings in Hansen's case stayed while a case addressing the constitutionality of section 1324(a)(1)(A)(iv) was resolved by another panel.  *See United States v. Sineneng-Smith*, no. 19-67.[1]  The appeal in Hansen's case remains stayed.

5.     18 U.S.C. § 3143(b) permits release pending appeal of a defendant found guilty and sentenced to a term of imprisonment if the judicial officer finds –

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
>
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in: (i) reversal; (ii) an order for a new trial; (iii) a sentence that does not include a term of imprisonment; or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

6.     "Substantial" defines the level of merit required in the question presented, and the phrase "likely to result in reversal or an order for a new trial" defines the type of question that must be presented.  *United States v. Handy*, 761 F.2d 1279, 1280 (9th Cir. 1985).  A "substantial question" is one that is "fairly debatable or fairly doubtful."  A "substantial question" is one of more substance than would be necessary to a finding that it was not frivolous.  *Id.* at 1283.  A "fairly debatable" question is one that is novel and not readily answerable.  *See id.* at 1281.

7.     The parties agree and stipulate that:

a)     the standard and special conditions of release set forth and incorporated by

---

[1] The Ninth Circuit held in *Sineneng-Smith* that section 1324(a)(1)(A)(iv) was facially unconstitutionally overbroad.  The Supreme Court overturned the Ninth Circuit's decision on May 7, 2020, and remanded for further proceedings, including consideration of the defendant's as-applied constitutional challenge to section 1324(a)(1)(A)(iv).  The Supreme Court's reversal of the Ninth Circuit's determination on the facial challenge to the statute in *Sineneng-Smith* was not based on the merits of the claim but rather on the Ninth Circuit's violation of the party presentation principle after the panel raised the claim on the defendant's behalf.  Thus, the Ninth Circuit could reach the same determination on Hansen's constitutional challenge to section 1324(a)(1)(A)(iv) that it did in *Sineneng-Smith*.

reference below (*see* ¶ 10), constitute a combination of conditions that will reasonably assure Hansen's appearance at future proceedings and the safety of the community; and

       b)    Hansen's appeal is not for the purpose of delay and raises a non-trivial, substantial question concerning the constitutionality of section 1324(a)(1)(A)(iv), in satisfaction of 18 U.S.C. § 3143(b).[2]

8.    Hansen is currently serving his sentence at FCI Lompoc, in Lompoc, California, with a projected release date of May 2, 2034.  As of May 20, 2020, the Bureau of Prisons has announced that 873 of 1,162 inmates at FCI Lompoc (and 8 staff) have tested positive for infection by COVID-19.

9.    According to medical records filed under seal with this proposed stipulation, Hansen, who is 67 years old, suffers from numerous medical conditions.  Specifically, he suffers from type 2 diabetes mellitus with diabetic neuropathy, chronic kidney disease, arthritis, obesity, hypertension, gallstones, gout, and various mobility, joint and pain problems, among others.[3]  *See* Exhibit 1 (filed under seal with original stipulation, ECF No. 206).  Some of these conditions have been recognized by the Center for Disease Control as conditions that heighten the risk to an individual that would result from an infection of COVID-19.

10.    To facilitate his release to supervision pending the resolution of his direct appeal, Hansen agrees to submit to the following specific conditions of release:

       a)    Hansen agrees to submit to supervision by the United States Pretrial Services and to comply with the standard release conditions set forth herein and with the special release conditions set forth in a separate writing provided to defense counsel and attached hereto as Exhibit 2;

       b)    Hansen has surrendered his United States and Australian passports to the United States and agrees to not seek a new United States or Australian passport, or a passport or travel documents issued by any other country;

---

[2] The United States does not concede that section 1324(a)(1)(A)(iv) is unconstitutional.  Rather, the United States acknowledges *only* that, in light of the Ninth Circuit's original holding in *Sineneng-Smith*, Hansen's challenge to the statute's constitutionality is not frivolous, under the section 3143(b) standard, and raises a question that is "fairly debatable."  *See Handy*, 761 F.2d at 1280-83.

[3] In an abundance of caution and in light of the current situation at FCI Lompoc, the United States acknowledges and directs the Court's attention to Hansen's medical situation.  However, the United States does not concede that Hansen's health issues control this request for relief.  Nor does the United States concede that the Bureau of Prisons cannot adequately provide care for Hansen after he resumes his prison sentence, should the Ninth Circuit affirm his conviction.

1           c)       Hansen agrees not to travel outside of the geographic boundaries of the Eastern

2   District of California under any circumstances;

3           d)       Hansen agrees to submit to home incarceration at a residence approved by the

4   supervising officer, and agrees to seek advance approval from the supervising officer or the Court for

5   any travel outside the approved residence;

6           e)       Hansen agrees to execute an unsecured appearance bond for $50,000;

7           f)       Hansen agrees to submit to electronic monitoring.

8           11.     Hansen further agrees and stipulates that he will submit to such other conditions of

9   release the Court may determine appropriate.

10           12.     To protect the community from the spread of COVID-19, Hansen agrees and stipulates

11   that he will not be released from custody pursuant to any order on this stipulation until he has satisfied

12   any required medical protocol—including any required quarantine period—imposed by the BOP.

13           13.     To protect the community from the spread of COVID-19, Hansen agrees and stipulates

14   that, following his release from custody, he will complete a 14-day quarantine period at the residence

15   approved by the supervising officer.  During this 14-day quarantine period, Hansen agrees to reside in

16   that residence at all times except for medical needs pre-approved by the supervising officer.

17           14.     To protect the community from the spread of COVID-19, Hansen agrees and stipulates

18   that, following the 14-day quarantine period, he will attempt to obtain a COVID-19 test with a medical

19   provider at a location approved by supervising officer, and will report the results of that COVID-19 test

20   to his supervising officer immediately upon receipt.  Upon completion of the 14-day quarantine period

21   and after he has submitted a negative Covid-19 test result to the supervising officer, Hansen will

22   participate in the location monitoring program as described in more detail in Exhibit 2.

23           15.     Pursuant to General Order 616 of this Court, issued on April 15, 2010, Carolyn Wiggin,

24   counsel for Hansen, hereby affirms that she has obtained Hansen's knowing and informed permission to

25   sign any and all documents on his behalf required to be signed by Hansen to secure his release.

26           16.     This stipulation is entered into solely for the purpose of obtaining Hansen's release

27   pending his direct appeal to the Ninth Circuit, and in no way alters the terms of the sentence imposed by

28   his judgment of conviction, nor does it affect the government's right to seek modification or vacation of

the release order should cause exist for doing so.

17.    Under the foregoing conditions and those set forth in the proposed order and Exhibit 2 filed with this stipulation, the United States does not oppose Hansen's release to supervision pending resolution of his direct appeal.

**IT IS SO STIPULATED**.


Dated:  May 20, 2020                                    McGREGOR W. SCOTT
                                                       United States Attorney


                                                        /s/ ANDRÉ M. ESPINOSA
                                                       ANDRE M. ESPINOSA
                                                       KATHERINE T. LYDON
                                                       Assistant United States Attorneys


Dated:  May 20, 2020                                    /s/ CAROLYN WIGGIN
                                                       CAROLYN WIGGIN
                                                       TIMOTHY ZINDEL
                                                       Counsel for Defendant
                                                       HELAMAN HANSEN

McGREGOR W. SCOTT
United States Attorney
ANDRÉ M. ESPINOSA
KATHERINE T. LYDON
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone:  (916) 554-2700

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.  2:16-CR-0024 MCE |
| Plaintiff, | ORDER ON THE PARTIES' AMENDED STIPULATION REGARDING BAIL PENDING APPEAL PURSUANT TO 18 U.S.C. § 3143(B) |
| v. | |
| HELAMAN HANSEN, | |
| Defendant. | |

**ORDER**

Pursuant to the parties' stipulation and for good cause shown, the Court finds:

1.     Clear and convincing evidence that the standard and special conditions of release set forth below and incorporated by reference in Exhibit 2 to this Order, constitute a combination of conditions that will reasonably assure Hansen's appearance at future proceedings and the safety of the community; and

2.     Hansen's appeal is not for the purpose of delay; and

3.     Hansen's appeal raises a substantial question of law or fact—that is, a non-frivolous and fairly debatable question—about the constitutionality of Title 8, United States Code, section 1324(a)(1)(A)(iv), sufficient to satisfy the standard under 18 U.S.C. § 3143(b).

**Accordingly**, pursuant to the parties' stipulation and for good cause shown, it is hereby

**ORDERED** that, the Bureau of Prisons shall release Helaman Hansen (Reg. No. 75560-097) from custody forthwith but no earlier than a date after Hansen has satisfied any required medical

protocol—including any required quarantine period—imposed by the Bureau of Prisons to protect the community from the spread of COVID-19; and it is further

**ORDERED** that:

1.      Hansen shall submit to supervision by the United States Pretrial Services and comply with all of the below conditions and all those special conditions set forth in Exhibit 2 to this Order;

2.      Hansen shall surrender to the United States any passports he may possess that he has not yet surrendered and he shall not seek a new United States or Australian passport, or a passport or travel documents issued by any other country;

3.      Hansen shall not travel outside of the geographic boundaries of the Eastern District of California under any circumstances;

4.      Hansen shall submit to home incarceration at a residence approved by the supervising officer and seek advance approval from the supervising officer or the Court for any travel outside the approved residence;

5.      Hansen shall execute an unsecured appearance bond in the amount of $50,000 before his release from custody;

6.      Hansen shall, following his release from custody, complete a 14-day quarantine period at the residence approved by the supervising officer.  During this 14-day quarantine period, Hansen shall reside in that residence at all times except for medical needs pre-approved by the supervising officer.

7.      Hansen shall, upon completion of the 14-day quarantine period, attempt to obtain a COVID-19 test with a medical provider at a location approved by supervising officer and shall report the results of that COVID-19 test to his supervising officer immediately upon receipt.

8.      Hansen shall, upon completion of the 14-day quarantine period and after he has submitted a negative Covid-19 test result to the supervising officer, participate in the location monitoring program as described in more detail in Exhibit 2; and it is further

///

///

///

///

1       **ORDERED** that, the United States shall, within two weeks of the issuance of a decision by the

2  Ninth Circuit affirming Hansen's conviction, submit a proposed order providing for a date no more than

3  30 days thereafter for Hansen to self-surrender back into the custody of the Bureau of Prisons to serve

4  the remainder of his sentence.

5       IT IS SO ORDERED.

6  Dated:  May 20, 2020

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit 2

# Special Conditions of Release

## AMENDED SPECIAL CONDITIONS OF RELEASE

Re: Hansen, Helaman
No.: 2:16-CR-0024 MCE
Date: May 19, 2020

1.  You must report to and comply with the rules and regulations of the United States Pretrial Services Office;

2.  You must report to Pretrial Services as directed on the first working day following your release from custody;

3.  You must reside at a location approved by the supervising officer and not move or absent yourself from this residence without the prior approval of the supervising officer or the Court;

4.  You must cooperate in the collection of a DNA sample;

5.  You must not possess a firearm/ammunition, destructive device, or other dangerous weapon; additionally, you shall provide written proof of divestment of all firearms/ammunition currently under your control;

6.  You must refrain from excessive use of alcohol or any use of a narcotic drug or other controlled substance without a prescription by a licensed medical practitioner; and you must notify the supervising officer immediately of any prescribed medication(s). However, medicinal marijuana, prescribed or not, may not be used;

7.  You must report any contact with law enforcement to your supervising officer within 24 hours.

8.  You must not facilitate, encourage, participate in, or otherwise have any involvement in the acceptance of money or other things of value in exchange for immigration advice of any kind, including, but not limited to adult adoptions in pursuit of citizenship, obtaining U visas, or obtaining other types of visas;

9.  You must not facilitate, encourage, participate in, or otherwise provide advice of any kind about adult adoption in any jurisdiction;

10. You must have no direct or indirect contact whatsoever with victims of AHA's Migration Program, including any adoptive parents of those victims or others involved in the facts that formed the basis of the charges for which you were tried and convicted in 2017;

11. You must have no direct or indirect contact whatsoever with any witness against you who testified at the 2017 criminal trial resulting in your conviction of fraud other offenses;

12. You must not post any video to any YouTube page, any social media website, or any other publicly available Internet website;

13. You must not re-launch any website or other media promotion of AHA or any AHA affiliate organizations over which you had control;

14. You must not post anything to the Internet or use email to communicate except to communicate with your defense team and family or unless otherwise expressly approved by your pretrial services officer after consultation with counsel for the United States;

15. You must not instruct or encourage any person, including any former or current agent or employees of AHA or any of AHA's affiliate entities, to engage in conduct you are prohibited from engaging in by conditions 8-14;

16. You must report to your supervising officer any financial transactions greater than $100 in which you engage or direct other to engage on your behalf, other than routine payments of monthly living expenses including mortgage, rent, grocery, and similar payments.

17. Following your release from custody, you must complete a 14-day quarantine period at your family residence. During this 14-day quarantine period, you must remain in your residence at all times except for medical needs preapproved by the Pretrial Services Officer. You must comply with any and all telephonic and virtual (video) reporting instructions given to you by the Pretrial Services office;

18. Following the 14-day quarantine period, you must attempt to obtain a COVID-19 test with a medical provider at a location approved by  the Pretrial Services Officer, and you must report the results of your COVID-19 test to Pretrial Services immediately upon receipt;

19. Upon completion of the 14-day quarantine period and after you have submitted a negative COVID-19 test result to Pretrial Services, you must participate in the following location monitoring program component and abide by all the requirements of the program, which will include having a location monitoring unit installed in your residence and a radio frequency transmitter device attached to your person. You must comply with all instructions for the use and operation of said devices as given to you by the Pretrial Services Agency and employees of the monitoring company. You must pay all or part of the costs of the program based upon your ability to pay, as determined by the pretrial services officer; and

20. HOME INCARCERATION: You must remain inside your residence at all times except for medical needs or treatment; religious services; and court appearances pre-approved by the pretrial services officer.